# CHARLESTON.

## HEATHERLY *v.* BANK.

Submitted January 18, 1888.—Decided February 25, 1888.

1. CONTRACTS—CONSTRUCTION—DECLARATIONS OF PARTIES.

   If the language of a written agreement is on its face ambiguous, the court will look at the surrounding circumstances, at the situation of the parties and the subject-matter of the contract, and at acts done by the parties under it, for aid in giving a construction to its language, but not to the verbal declaration of the parties. (p. 77.)

2. CONTRACTS—CONSTRUCTION.

   The whole of such a contract should be considered in determining the meaning of any or all its parts. (p. 77.)

3. INJUNCTION—TO RESTRAIN COLLECTION OF JUDGMENT—UNCERTAINTY OF AMOUNT DUE.

   Where an injunction has been awarded to stay the collection of a judgment, and it appears from the answer of the defendant that there is a considerable sum in his hands, which he has agreed to apply as a credit on such judgment, and it is uncertain what is the amount which he ought, under an agreement into which he has entered, to credit on such judgment, the court ought not to dissolve the injunction till it has ascertained by sending the cause to a commissioner, if necessary, the amount of the credit which should be so given on such judgment. (pp. 80, 81.)

Statement of the case by GREEN, JUDGE :

The facts appearing from the pleadings in this cause out of which this suit arose are these : The Farmers' Bank of Philippi obtained a judgment against J. W. Talbot, John F. Woodford, James E. Heatherly, Henry A. Gale, James M. Woodford, James W. Robinson, and A. T. Daniels in the Circuit Court of Barbour, on February 1, 1886, for $1,781.80 with interest from January 30, 1886, and costs $3.95. James M. Woodford was insolvent. He owned a considerable amount of property, both real and personal, but owed much more than the property was worth, and numerous judgments had been obtained against him. The Farmers' Bank of Philippi had obtained against him, prior to March 27, 1886, six other judgments, which aggregated in amount, including interest to that day and costs, $4,170.82. No executions were issued prior to March 27, 1886, on any of these judgments in favor of the Farmers' Bank of Philippi. There were, however, then in the hands of constables or other officers, executions on six other judgments, obtained by other persons against James M. Woodford. These judgments amounted with interest to March 27, 1886, and costs, to $2,536.17.

James M. Woodford owned then a house and lot in Philippi, Barbour county, worth about $1,000.00, and 262 acres of land in said county, worth about $6,500.00. But this real estate, worth about $7,500.00, was at that time incumbered by liens far exceeding its value. These liens, excluding the judgments of the Bank of Philippi against him, which then aggregated about $6,081.00, amounted, exclusive of interest and costs, to $8,859.80. He owned, in addition to this property, a stock of goods in Philippi, sixteen head of cattle and two horses, and a number of notes and accounts against sundry persons for goods which had been purchased of him at this store. The stock of goods at prime cost was worth about $3,200.00 ; there being a slight diversity in the statement of different parties as to their cost-price. The horses and cattle were worth about $650.00. The Bank of Philippi was also insolvent at that time, and its affairs were being settled up by George W. Gale, Jr., its cashier, and Charles F. Teter.

These were the surrounding circumstances when this contract was made, on March 27, 1886, by James M. Woodford,

and C. F. Teter and G. W. Gale, Jr., trustees of said bank, and it was duly acknowledged at once, and recorded in the clerk's office of Barbour county. The contract was as follows:

"This contract, made and entered into this 27th day of March, 1886, between James M. Woodford, of the first part, and Charles F. Teter and G. W. Gale, Jr., trustees for the Farmers' Bank of Philippi, of the second part, witnesseth, that for and in consideration of the premises hereinafter stated the said James M. Woodford has this day sold, assigned, transferred, and delivered unto the said Teter and Gale, trustees as aforesaid, the following property, to wit: The stock of store goods now in the store-house of G. A. Byser, in the town of Philippi, consisting of dry goods, notions, hardware, queensware, drugs, etc. Said goods shall be invoiced on next Monday, and the amount and value of said goods shall be ascertained at prime costs, which is the amount said Teter and Gale, trustees as aforesaid, agree to pay to said Woodford for said goods. Also the notes, accounts, and books of account pertaining to said store. But said Woodford is to settle said accounts with the customers of said store, and collect the money due thereon, or to take notes for the amounts due for said accounts, payable to the said Farmers' Bank, and, when money is collected on said accounts by said Woodford, the same shall be paid over to said bank. Also six head of four-year-old steers at $50.00 per head, and ten head of two-year-old steers and heifers at $20.00 per head. Said Woodford shall feed and pasture said cattle until they are sold by said bank, or its trustees or agents, free of charge. Also two head of horses for $150.00. For which said property the said Farmers' Bank, acting by and through its said trustees, agrees to assume and pay off and discharge all execution-liens that are at this time outstanding in the hands of the sheriff or any constable of this county, which shall be paid in full. Next, said bank, acting as aforesaid, shall pay itself all judgments and debts and liabilities due from said Woodford to said bank. The balance that may be coming to said Woodford, after the foregoing debts shall be paid, shall be paid out by said trustees or the said bank to such of said Woodford's creditors as he

may direct.　But it is always to be understood that any loss that may be sustained on said notes, accounts, and books of accounts is to be borne by said Woodford, unless said loss should occur on account of the neglect of said bank.

"Witness the following signatures and seals :

"J. M. WOODFORD,　[SEAL.]
"C. F. TETER,　[SEAL.]
"G. W. GALE, JR.　[SEAL.]"

About January 1, 1887, there was an execution issued on the judgment in favor of the Farmers' Bank of Philippi, against James E. Heatherly and others, for $1,781.80, with interest from January 30, 1886, and costs, and was placed in the hands of the sheriff to be levied and collected.　Thereupon James C. Heatherly brought this suit in the chancery court of Barbour.

In his bill he alleged the above facts, and claimed that, by its true meaning, said contract of March 27, 1886, operated at once to pay off and discharge all the debts, judgments, and liabilities due from James M. Woodford to the Bank of Philippi, including said first-named judgment of $1,781.80, with interest and costs, against him and others, including the plaintiff.　The bill also had in it these additional allegations : "That for many years before the 27th of March, 1886, the said James M. Woodford had carried on in the town of Philippi a large store of general merchandise, in which the sales were large, and most of them upon credit to good and solvent men in said county, for which said Woodford on said 27th of March, held them bound to him by 'notes, accounts, and books of account pertaining to said store;' and that on said day the same were by him turned over to said trustees, in accordance with said contract, and all of said notes and accounts and books of account are in the hands of said bank, or said Woodford as its agent for their collection, as well as all of said cattle and horses, and the actions of said trustees have been indorsed and approved by said bank.　And the plaintiff is informed, and accordingly charges as true, that said goods were invoiced at their prime cost, and their invoiced value was $3,245.00 ; and he is likewise informed, and so charges as true, that said cattle and horses were worth

$650.00, and said notes pertaining to said store were worth at least $4,000.00; that the open accounts pertaining thereto were worth at least $2,500.00; and that said books of accounts were worth at least $2,000.00 in addition thereto; and that in all they aggregated and were worth $12,395.00,—all of which has gone into the hands of said bank."

The bill contained also this allegation: "And so the plaintiff charges that the said Farmers' Bank of Philippi has received, and has in its possession, and has converted to its own use, all of the aforesaid personal property, so transferred and sold to it by said Woodford, consisting of said merchandise, notes, accounts, and books of accounts pertaining to said store, and also said horses and cattle; and that the amount and value thereof greatly exceed all of said judgments, debts, and liabilities due to it from said Woodford, and said execution-liens so outstanding against him in the hands of said officers."

This bill concludes thus: "That said contract is in the hands of said bank, and also all information in relation to the amount and value of said personal property so sold to it by said Woodford; but the plaintiff files as part hereof what he charges is a true copy of said contract. The plaintiff therefore prays that the said contract may be construed by this court, and that the Farmers' Bank of Philippi, and its agents, from the collection of said judgment for $1,781.80 may be forever enjoined and restrained, and that he may have all such further and general relief as the nature of his case may require, and to equity may appertain." The bill was sworn to in the usual form by the plaintiff.

The injunction prayed for was awarded, and took effect, January 31, 1887, when the injunction-bond required was executed.

To this bill the Farmers' Bank of Philippi filed its answer, which expressly or tacitly admits the facts I have stated as existing when the suit was brought, and, in answer to the portions of the bill which I have quoted above, it says: "Respondent, further answering, says it is true that on 27th of March, 1886, an agreement was entered into between said James M. Woodford, who was then indebted to respondent on his own account in quite a large sum, and for which judg-

ment then existed against him, by which said Woodford transferred to trustees for respondent's benefit his stock of goods in his store in Philippi, certain cattle and horses, and his notes and accounts,—the goods to be taken at their prime cost, the cattle and horses at an agreed price. That the goods amounted by actual invoice to $3,201.28; the cattle and horses to $698.71. That, of the notes and accounts turned over, only about $140.00 have been collected, and respondent is advised that nothing more, or certainly very little more, can be realized therefrom, the debts so turned over proving to be almost worthless; so that practically the whole assets that came to the hands of the trustees, Gale and Teter, amount to about $4,040.00. That under said agreement of March 27, 1886, respondent has paid executions then outstanding against said James M. Woodford to the amount of $2,658.67; which would leave only about $1,200.00, after deducting expenses and commissions, to be applied upon the debts of said James M. Woodford to respondent, for which he was liable individually."

This answer has in it this additional matter, not stated in the bill: "Respondent further says that said James W. Talbott was the principal in the debt upon which said judgment was so confessed, and the other defendants therein the sureties of said Talbott to respondent; that said J. W. Robinson, J. F. Woodford, and the plaintiff were regarded as solvent."

This answer claims that it was not the intention and true meaning of the contract of March 27, 1886, to secure any of the debts due from James M. Woodford to it, except those in which he was principal, and not including this debt of $1,781.00, with interest and costs, in which he was only security, and which debt was already amply secured. George W. Gale, Jr., the cashier of said bank, made the usual affidavit to this answer.

James M. Woodford filed his answer. He admits, in effect, all the allegations of the bill but one, and claims that the construction of the contract by the plaintiff is correct. He makes a very different statement, however, from either the bill or the answer of the Bank of Philippi as to the notes and book-accounts transferred by the agreement of March

27, 1886. He says: "The book-accounts amounted to $600.00, and the notes pertaining to the said store amounted to $1,400.00 or $1,500.00;" but how much was realized from them he does not state. This answer was sworn to by him. The other answer filed in the cause stated no facts, but merely claimed that the plaintiff's construction of this contract or agreement was right.

These answers were replied to generally, and the court on July 22, 1887, entered the following order : " This cause came on this day to be heard upon the bill, process duly executed upon all the defendants, proceedings at rules regularly had and matured, separate answer of the Farmers' Bank of Philippi, general replication thereto, separate answer of James M. Woodford, the joint answer of A. T. Daniels, J. W. Robinson, and Henry A. Gale, bill taken for confessed as to defendants not appearing, and exhibits, and upon the argument of counsel ; upon consideration whereof the court is of opinion that it is not the intent and meaning of the contract between the said James M. Woodford and said bank of date March 27, 1886, that the same operates a payment or extinguishment of the judgment in the bill mentioned, but that the effects mentioned in said contract, and therein transferred by said Woodford to said bank, were meant and intended to be applied *pro tanto* to the payment and extinguishment of said judgment, and of all the other judgment-debts and liabilities due from said Woodford to said bank on that day. It is therefore adjudged, ordered, and decreed that the injunction herein awarded be dissolved, and that the said plaintiff and the said defendants, James W. Talbott, John F. Woodford, Henry A. Gale, James M. Woodford, Jacob W. Robinson, and A. T. Daniels, the defendants in said judgment, do pay to the said Farmers' Bank of Philippi the sum of $1,981.74, with interest thereon from this day until paid, being the amount of principal, interest, and costs due on said judgment on the 31st day of January, 1887, when this injunction took effect, with damages thereon in lieu of interest at the rate of ten per centum per annum until this day ; and said Farmers' Bank of Philippi hath leave to sue out execution therefor against said judgment debtors, with interest thereon from this day, and the costs of this injunction."

From this order the plaintiff, Heatherly, has obtained an appeal and *supersedeas.*

*S. V. Woods* for appellant.

*J. Hop. Woods* for appellees other than the Farmer's Bank.

GREEN, JUDGE.

The principal question involved in this case is: What is the true construction of the agreement between James M. Woodford and the trustees of the Farmers' Bank of Philippi, C. F. Teter and G. W. Gale, Jr., the cashier of the bank, dated March 27, 1886, a full copy of which appears in the statement of this cause? It is true that the contract is on its face ambiguous; but it does not seem to me to be difficult to ascertain its meaning, and the real intention of the parties, if we apply to it some well-settled rules of construction which are based on common sense. One of these rules is that when the language of a written contract is susceptible of more than one interpretation, that is to say, is on its face ambiguous, the courts will look at the surrounding circumstances existing when the contract was made, at the situation of the parties, and the subject-matter of the contract, and will call in aid the acts done by the parties under it, as affording a clue to the intention of the parties. See *Titchenell* v. *Jackson*, 26 W. Va. 460, point 1 of syllabus, and page 469; *Crislip* v. *Cain*, 19 W. Va., point 13 of syllabus, pp. 441-483; *Hurst* v. *Hurst*, 7 W. Va. 299.

When such a contract is to be construed, another well-settled rule based on common sense is, that the whole contract should be considered in determining the meaning of any or all its parts. The reason of this rule is obvious. The same parties make all the contract, and may be supposed to have had the same purpose and object in view in all of it; and, if this purpose is more clear and certain in some parts than in others, those which are obscure may be illustrated by the light of the others. See 2 Pars. Cont. (6th Ed.) side pages 501-503, bottom pages 648, 649, and notes, with many authorities cited.

By this contract the bank or its trustees were to pay for the personal property of Woodford certain fixed prices, and

for the stock of goods their prime cost, to be ascertained by an inventory to be taken at once. This inventory was taken at once, and the whole price to be paid for all of the personal property,—sixteen cattle, two horses, and these goods,—thus ascertained, was according to the statement of the bill $3,895.00, and according to the statement in the answer of the bank $3,900.00. They differ but very little, and we will assume, as most favorable to the plaintiff, that the price to be paid or settled for all the personal property, goods, cattle, and horses was $3,900.00.

But besides this personal property,—the price to be paid for or settled for it thus fixed—there was also by the agreement transferred or assigned to the bank or its trustees all the notes which Woodford had taken of his customers for goods previously sold to them by him, and also all his open accounts against his customers at this store. The notes which Woodford had previously taken of his store customers were to be transferred and delivered to the bank or its trustees; and they were to collect them. But Woodford agreed without compensation, to settle with his customers these open store-accounts, and take from them notes payable to the bank; or he would collect money on them, and at once pay it over to the bank; and also agreed to feed the 16 head of cattle, without charge, until they could be sold by the trustees. There was no attempt to inventory these choses in action, or to ascertain their value in any way; but the bank or its trustees were not to account for any of them which were not collected, unless they were lost by its negligence. This distinctly appears from the last clause in this agreement.

One part of this agreement does say that the trustees of the bank agree to pay Woodford for said goods, notes, and accounts; but the manner in which these payments were to be made is distinctly shown by a subsequent part of the agreement,—by which the bank, through these trustees, agreed first to assume, pay off, and discharge all execution-liens that were at this time [March 27, 1886,] outstanding in the hands of any sheriff or constable of that [Barbour] county, which should be paid in full; next, that said bank, acting by its trustees, shall pay itself all judgments and debts and liabilities due from Woodford to the bank; and lastly, that the

balance that may be coming to said Woodford shall be paid out by said trustees or said bank to such of Woodford's creditors as he may direct.

Now, this clause of the agreement was obviously not inserted for the purpose of fixing the amount to be paid by the trustees or the bank for the transfer of the goods, cattle, horses, and store-accounts, and notes by Woodford to the bank or its trustees, that is, $3,900.00, and so much more as could be collected by the use of diligence by these trustees or the bank out of these notes and open accounts; for this, as I have shown, had been definitely fixed by other parts of this agreement. This clause was obviously inserted to show how this amount agreed to be paid for the transfer of this personal property and these choses in action to the bank or its trustees was to be paid; that is—*first*, on all execution-liens on the property and choses in action transferred; *secondly*, on the judgment-debts and liabilities of Woodford, the assignor, to the bank; and, *lastly*, the balance, if any, on such debts of Woodford as he should direct.

It is obvious, too, that in this second class of Woodford's debts to be paid—the debts, liabilities, and judgments due from Woodford to the bank—there is no difference made between them, whether due from Woodford as principal or as security. All his liabilities to the bank stand on the same footing, and are therefore to be paid *pro rata* according to the amount, severally, of these debts and liabilities; and of course the judgment for $1,781.80 and interest and costs against Woodford, the plaintiff, and others is included in this class. As the clause only designates the manner in which a sum to be paid for this transfer of personal property and choses in action is to be paid, if, in paying it in this manner, the whole amount of the principal to be paid for this personal property and choses in action is exhausted before all of this second class are paid, this fund must be paid to them *pro rata;* and, if it fails to pay them off in full, then, of course, the bank would still have a right to collect the balance of Woodford, or of any of his sureties.

While these prior execution-liens on all this property, both personal and choses in action, which were to be first paid, amounted on their face to $2,536.17, and the answer of

the bank admits that the amount actually due on them on March 27, 1886, was satisfied by the payment by it of $2,655.67, yet when these payments were made by the bank or its trustees does not appear from the answer; so that, if this answer was to be regarded as evidence for the bank—which it is not—we still could not tell what amount was actually due on these prior executions on the 27th of March, 1886. It was very probably $2,655.67. The $3,900.00 to be paid for the personal property alone, exclusive of what was to be paid for the transfer of the choses in action, would pay off these prior executions and liens, leaving, according to the statement of the bank in its answer, some $1,350.00, though it probably exceeded this amount, for distribution among the second class, the judgment-debts and liabilities of Woodford to the bank. According to the bill, and as admitted by the answer, they amounted on March 27, 1886, to about $6,073.00; and the ratable proportion which was to be applied to this judgment against Woodford, the plaintiff, and others of this $1,350.00, if this was all there was for distribution, would amount to some $400.00; and in addition to this there should be credited on the judgment its ratable proportion of whatever could by diligence be collected by the bank or its trustees out of the notes and open accounts transferred to the bank or its trustees by Woodford. What this amount is, the record does not show. The bill claims that this sum should be more than $8,500.00, which, if true, would pay off this judgment in favor of the bank against the plaintiff, Woodford, and all others, as well as all the claims and liabilities of Woodford to the bank, and leave considerable balance to be paid to other creditors of Woodford as he might direct. But Woodford, in his answer, states these choses in action transferred amounted to a little over $2,000.00. What portion of them could by diligence be collected he does not state; while the bank, in its answer, states that only about $140.00 of them has been collected, and nothing more, or very little more, can be realized from them.

Neither the bill nor these answers, they having all been replied to generally, were evidence on the hearing of this cause.

The decree of the Circuit Court of July 22, 1887, so far as

it construed this agreement of March 27, 1886, as not operating as a payment or extinguishment of the judgment in the bill mentioned, is correct; but in so far as it dissolved the injunction granted to stay the collection of said judgment, and decreed that the defendants in said judgment do pay to the Farmers' Bank of Philippi $1,981.74, with interest thereon from July 22, 1887, being the amount of the principal, interest, and costs due on said judgment on the 31st of January, 1887, when the injunction took effect, with damages thereon, in lieu of interest at the rate of 10 *per cent. per annum* until July 22, 1887, and which gave leave to the Farmers' Bank of Philippi to sue out execution therefor against said judgment debtors, with interest thereon from July 22, 1887, and the cost of this injunction, is erroneous. For, as I have shown, at that very time the bank, as shown by its answer, had some $400.00 in its hands, which it was bound to apply and credit on this judgment, and it probably had considerable more than this amount, but how much more must depend on the settlement of accounts of the said trustees of the Farmers' Bank of Philippi, and of the Farmers' Bank itself, showing what amount of assets the bank, or the trustees of said bank, have collected, or ought to have collected, of the assets transferred to the said trustees of the bank, or the bank itself, under this agreement of March 27, 1886, and how the same has been applied, and how much is applicable to the payment of the judgment in favor of said bank against said Woodford, the plaintiff, and others named in the bill. And in making this settlement no commission out of the funds transferred to said bank or its trustees by said Woodford by the agreement of March 27, 1886, shall be allowed; said agreement not having stipulated that any commission or compensation should be claimed for executing the trust, but on its face showing that no charge of this description was expected to be made.

The decree of July 22, 1887, must therefore be set aside, reversed, and annulled, and the appellant must recover of the appellee, the Farmers' Bank of Philippi, his costs in this Court expended; and this Court must enter such a decree as will carry out the views above expressed, and this cause must be remanded to the Circuit Court of Barbour to be fur-

ther proceeded with according to the principles laid down in this opinion, and, further, according to the principles governing courts of equity.

REVERSED.   REMANDED.