# CHARLESTON.

## FARMERS' BANK v. WOODFORD.

*(HOLT, JUDGE, absent.)

Submitted June 15, 1890.—Decided December 12, 1890.

1. CONTRIBUTION—SURETIES.

In a suit in equity to subject the land of a judgment-debtor to judgments against him, which are numerous and in favor of different persons, the fact that in one of the debts he is a surety with other solvent sureties of an insolvent principal does not require that lands of the solvent co-sureties be brought into the case and subjected to pay a portion of that debt, though those co-sureties are parties, by reason of the right to contribution, nor require a decree of contribution therein.

2. CO-DEFENDANTS.

Rights of co-defendants can be settled as between them only

*Case submitted before Judge Holt's appointment.

when the case as between them grows out of the pleadings and proofs between plaintiff and defendant.

3. ERRORS AND MISTAKES—COSTS.

Where this Court has a case before it properly on other grounds, it will correct any error in the court below as to costs, though it would not for that alone reverse.

4. TRUSTS AND TRUSTEES—SURETIES.

Where a deed of trust secures several debts to the same persons with different sureties therein, such debts stand equal as liens, and are to be paid out of the property conveyed ratably, if the original creditor yet owns them, and the rights of assignees are not involved, unless the deed otherwise provides.

*J. Bassell* and *Dayton & Dayton* for appellants, cited 31 W. Va. 70; 10 W. Va. 206, 226, 227; 25 W. Va. 242.

*S. Woods* for appellees, cited 31 W. Va. 70.

BRANNON, JUDGE:

The record in these cases discloses that on the 27th day of March, 1886, the defendant, James M. Woodford, was a merchant in the town of Phillippi, and largely indebted; that numerous judgments had been rendered against him, among others one in favor of the Farmers' Bank of Phillippi, on the 31st day of January, 1885, for one thousand four hundred and ninety six dollars and forty eight cents; another in favor of said bank against J. W. Talbott, John F. Woodford, J. E. Heatherly, Henry A. Gall, J. W. Robinson, A. T. Daniels, and said James M. Woodford, on the 1st day of February, 1886, for one thousand seven hundred and eighty one dollars and eighty cents; that on the 15th day of February, 1886, the said J. M. Woodford had conveyed his real estate to J. Hop. Woods, in trust, to secure two debts, one for one thousand five hundred dollars, the other for one thousand dollars, due to the National Bank of Kingwood, appellant Harvey being a surety on the one thousand five hundred dollar note, but appellant Johnson was not, while both were sureties on the one thousand dollar note; that on the 27th day of March, 1886, said judgment rendered in favor of said bank for one thousand four hundred and ninety six dollars and forty eight cents was owned by the firm of G. E. Grant & Bro., having been assigned by the said bank to them, but was at a later date reassigned to

said bank; that execution on said day was issued upon said judgment, and was received by the sheriff of said county at one o'clock A. M. of that day; that on said same 27th day of March, 1886, a judgment was rendered in favor of Laughlin Bros. & Co. against said Woodford, for one hundred and twenty dollars and nineteen cents upon which execution issued and went into an officer's hands at half past one o'clock P. M. of that day; that at six o'clock P. M. of the same day the said James M. Woodford confessed another judgment in favor of said bank for one thousand four hundred and eighty five dollars, upon which execution was at once issued and placed in the hands of an officer; that after this hour, between eight and ten o'clock at night, on the same day, the said Woodford, and said bank, acting through G. W. Gall, Jr., its cashier, and C. F. Teter, its attorney, as trustees, entered into a contract in writing, whereby said Woodford sold, assigned, transferred, and delivered unto said trustees his stock of store goods, notes, accounts, and books of account pertaining to said store, also six head of steers, at fifty dollars per head, and ten head of horses for one hundred and fifty dollars, in consideration of which said bank agreed to assume and pay off and discharge all execution liens at that time outstanding in the hands of the sheriff or any constable of said county which should be paid in full; next, said bank should pay itself all judgments and debts and liabilities due from said Woodford to said bank, the balance, after payment of all said debts, to be paid to said Woodford's creditors according to his order, and all loss on notes, accounts, and books of account to be sustained by Woodford unless the loss be by negligence of said bank; that subsequently, to wit, on Monday morning following the 29th day of March, 1886, said executions upon said bank judgments for one thousand four hundred and ninety six dollars and forty eight cents and one thousand four hundred and eighty five dollars were levied upon said store, goods, and stock, and said Laughlin Bros. & Co.'s execution was levied on the day following. Soon thereafter said bank filed its bill in chancery against said Woodford and numerous others, principally creditors of his, wherein it sets out all of its said judgments, and the

judgments of said other creditors, making no reference to said contract between said Woodford and it, but alleging its judgments as unpaid, and praying that this real estate might be ascertained, the liens thereon fixed, and the same sold in payment thereof.

After the institution of this suit by said bank, Greer & Laing instituted the second suit in chancery referred to in these proceedings, and filed their bill against said Woodford and numerous others, wherein they set out the recovery of a judgment by them against him, also a large number of other judgments, and fully set forth said contract between said Woodford and said bank, and charging all of said judgments in its favor against said Woodford thereby paid and discharged, prayed that it might be so declared, said bank's suit be dismissed, and the real estate, with the liens thereon of said Woodford, be ascertained and sold, under decree in their said suit.

At the July term, 1886, before the said suit of Greer & Laing had been instituted, an order of reference had been made in the first suit, that of the bank, directing Woodford's real estate to be ascertained with the liens thereon. Some time afterwards, the said Farmers' Bank sued out an execution upon its judgment for one thousand seven hundred and eighty one dollars and eighty cents against J. W. Talbott, John F. Woodford, J. E. Heatherly, H. A. Gall, J. W. Robinson, A. T. Daniels, and said James M. Woodford, and on the 11th day of January, 1887, James E. Heatherly presented his bill to the judge of said court, and procured an injunction restraining the said bank from collecting said judgment until further ordered. Said injunction cause was regularly matured, and is the third one referred to in these proceedings. In said bill said Heatherly sets out said contract between said bank and Woodford, and insists that by its terms said judgment was fully paid and discharged by Woodford.

In an answer, said Woodford admits, substantially, the allegations of said bill, and insists upon the same construction of said contract; while said bank by its answer denies the said construction claimed by the bill of said contract to be the true one, and sets out in detail the amount realized

and paid by it thereunder. At the July term, 1887, the said J. M. Woodford filed his answer to the bank's bill, and in the Greer & Laing case a decree was entered construing said contract adversely to the pretensions of said bill, and referring said cause to the commissioner to be considered in connection with said bank's bill, while in said third cause a decree was entered construing said contract, dissolving said injunction, and dismissing said bill. To this last decree in said third cause, an appeal was taken to the Supreme Court of Appeals by Heatherly, and said decree was reversed, 31 W. Va. 70 (5 S. E. Rep. 754) and the injunction reinstated, and by order entered therein at the July term, 1888, the said cause was referred to the same commissioner, to whom the other two had been referred.

At the October term, 1888, appellants Johnson and Harvey filed their joint answers to the bill of Greer & Laing, in which they admit their suretyship for Woodford upon said trust debts due the Kingwood Bank, and allege the fact that execution upon said bank's judgment for one thousand four hundred and ninety six dollars and forty eight cents, which is a lien prior to said trust owned at the time by G. E. Grant & Bro., had issued on said 27th day of March, 1886, and at eleven o'clock A. M. was placed in the sheriff's hands before said contract was entered into, and therefore should not be held or treated as a lien upon the real estate of said Woodford to the exclusion of other creditors whose liens were subsequent to said judgment, and especially of said deed of trust in favor of said National Bank of Kingwood; and further alleging that said Woodford was only one of four solvent sureties upon said bank's judgment for one thousand seven hundred and eighty one dollars and eighty cents against J. W. Talbott and others; and that his real estate should be exonerated from three fourths of said judgment, or, if the whole of the same should be so charged, that the other and junior creditors should be subrogated to the right of said Woodford to demand contribution from his co-sureties in said judgment. It is to be noted that the Supreme Court, by their decision in said third cause, had affirmed the court's construction of said contract, but reversed the cause for other reasons.

Commissioner Morall having filed his reports in said causes, the three were heard together, and on the 19th day of July, 1889, the decree complained of was entered, whereby the Court confirms the commissioner's report, and an alleged report of said trustees, Teter and Gall; ascertains the amount realized by the said trustees from the personal assets of J. M. Woodford under said contract of March 27, 1886, in the hands of said trustees, and apportions the same ratably; also ascertains what executions had priority over those of said Farmers' Bank issued upon its judgments, ascertaining said Laughlin Bros. & Co. to be one; that said executions had been paid by said trustees, discharging them from all liability on account thereof; ascertaining a balance of one thousand seven hundred and sixty one dollars and forty five cents, as of September 27, 1887, in the hands of said trustees; and apportioning the same ratably upon said judgments, recovered by said bank, of one thousand seven hundred and eighty one dollars and eighty cents against J. W. Talbott, Woodford, and others, of one thousand four hundred and ninety six dollars and forty eight cents, upon which execution had issued at eleven o'clock A.M., and of one thousand four hundred and eighty five dollars, upon which execution had issued at six P.M. of the same day, and before said contract was executed; further ascertaining that of said sum of one thousand seven hundred and sixty one dollars and forty five cents in said trustees' hands they had paid to, or for the benefit of, the said Farmers' Bank, the sum of one thousand four hundred and fifty two dollars and twenty five cents, and by reason of such payment absolving them from the payment of the whole of said sum of one thousand seven hundred and sixty one dollars and forty five cents, and from all liability to said Farmers' Bank, or to said Woodford, and from all liability on account of their management of the trust created by said article of agreement; ascertaining the priorities of said liens upon said Woodford's real estate, and, among others, ascertaining that the debt of one thousand five hundred dollars, secured by deed of trust to the National Bank of Kingwood, is prior to the one thousand dollars debt secured by the same trust to the same bank; decreeing said Woodford's lands to be sold, and

further decreeing the plaintiff Heatherly's costs in the third cause to be paid out of the proceeds of said sale. I refer to case of *Heatherly* v. *Bank*, 31 W. Va. 70 (5 S. E. Rep. 754) for inspection of said contract.

From said decree of 19th July, 1889, Isaac V. Johnson and Granville B. Harvey have taken an appeal to this Court.

The first error assigned is that the decree did not direct full payment of the judgment for one thousand four hundred and ninety six dollars and forty eight cents out of the funds in the hands of the trustees before any part of it was applied to the judgment for one thousand seven hundred and eighty one dollars and eighty cents against Talbott, Woodford, and others, and that for one thousand four hundred and eighty five dollars, and the judgment in favor of Laughlin Bros. & Co. The Farmers' Bank of Phillippi recovered three certain judgments (besides others) against James M. Woodford, namely, one for one thousand four hundred and ninety six dollars and forty eight cents, recovered January 31, 1885; one for one thousand seven hundred and eighty one dollars and eighty cents on February 1, 1886; and one for one thousand four hundred and seventy five dollars on March 27, 1886, at six o'clock P.M. Laughlin Bros. & Co. recovered their judgment for one hundred and twenty dollars and nineteen cents on March 27, 1886. On said judgment for one thousand four hundred and ninety six dollars and forty eight cents, an execution was delivered to an officer for levy on March 27, 1886, at eleven o'clock A. M., and levied on the property named in the contract on March 29, 1886. On the judgment in favor of Laughlin Bros. & Co., execution was delivered to an officer March 27, 1886, at half past one P.M.; on said judgment of one thousand four hundred and eighty five dollars, execution was delivered to an officer March 27, 1886, at six o'clock P. M. Thus of these three execution-liens that for the judgment of one thousand four hundred and ninety six dollars and forty eight cents was first; that for the Laughlin Bros. & Co. judgment second; that for the judgment of one thousand four hundred and eighty dollars was third. At date of the contract, there was no execution on the judg-

ment for one thousand seven hundred and eighty one dollars and eighty cents, if that were material. Later, on that 27th day of March, 1886, between eight and ten o'clock at night, James M. Woodford made the contract with Teter and Gall, trustees for the Farmers' Bank of Philippi.

Was the judgment for one thousand four hundred and ninety six dollars and forty eight cents, recovered by said bank against Woodford to be paid out of the fund in the hands of the trustees arising from said contract in full as a preferred debt under said contract? That depends on the construction and effect of the contract. This Court, in the case of *Heatherly* v. *Bank,* 31 W. Va. 70 (5 S. E. Rep. 754) has construed this contract as to the order of payment under it, the opinion by Judge GREEN saying that the fund arising under it was to be paid—*First,* on all execution-liens on the property and choses in action transferred by it; *secondly,* on the judgment-debts and liabilities of Woodford to the bank; and, *lastly,* the balance, if any, on such debts as Woodford should direct. If the matter stopped here, this debt of one thousand four hundred and ninety six dollars and forty eight cents would have no priority, as it would not fall in the first class; for, as this Court in said opinion said, debts due the bank were to be paid *pro rata,* and we would disregard the preference by reason of the execution for it.

But there is another fact very material here, and that fact is that, when said contract was made, the bank did not own said judgment, but had before that date assigned it to G. E. Grant & Bro. Clearly, G. E. Grant & Bro. were entitled to have this debt paid out of said fund as a debt in the first class because of the execution-lien for it. Clearly also, as I think, Woodford, as against the bank, was entitled to regard it as paid under the first class, though, if considered as a debt in the second, he would not; and could not the subsequent lienor, the Kingwood Bank, and the sureties of Woodford in the notes to it rely on such payment? This debt was afterwards, in May, reassigned by Grant & Bro., to the bank, but we must look at it as of the date of the contract.

The decree complained of is therefore erroneous, in that

it paid out of the fund in the hands of said trustees the debt of Laughlin Bros. & Co., in preference to said judgment of one thousand four hundred and ninety six dollars and forty eight cents of the bank, and also in that it allows the judgments of one thousand four hundred and eighty five dollars and one thousand seven hundred. and eighty one dollars and eighty cents to share with the former bank judgment in that fund. By no means does this decision conflict with the decision in *Heatherly* v. *Bank.* That only construed the contract, telling us in what order under it debts should be paid by classes, not by debts, not saying in what order any particular debt should be paid, except that the bank-judgment of one thousand seven hundred and eighty one dollars and eighty cents, would fall in the second class, it being the only one calling for such distinction in the case as it was then before the court. The contention there was that that judgment had been paid under a certain construction of the contract contended for. Heatherly brought an injunction to stop an execution on that particular judgment, alleging that by force of said contract it had been paid, and to decide that matter it became necessary to construe the contract, and decide whether that debt had been paid; and the court simply held that under the contract debts should be divided into three classes for payment, and that there should be paid, first, execution-liens, not designating what particular ones; secondly, all judgments and liabilities due the bank. There was no report then showing what specific debts were to share in the fund, and this Court was not called on to say, and did not say, what particular debts were to be paid. It declared principles, but did not apply them to facts, but said there must be an ascertainment of the amount of the fund. The facts pertinent 'to its distribution, the persons necessary to be present for that purpose, were not before the court; but facts and persons in further proceedings afterwards appeared. Said judgment for one thousand four hundred and ninety six dollars and forty eight cents ought to have received the fund in the hands of the trustees in preference to the judgments for one thousand four hundred and eighty five dollars, and

one thousand seven hundred and eighty one dollars and eighty cents, and the Laughlin Bros. & Co. judgment.

The second assignment of error is that the whole of the judgment for one thousand seven hundred and eighty one dollars and eighty cents was decreed against James M. Woodford's land without substituting junior creditors to Woodford's right of contribution against solvent co-sureties with James M. Woodford in that debt, viz., Heatherly, J. F. Woodford, and Robinson. Under this assignment, it is argued that the lands of these co-sureties should have been brought in and subjected to bear part payment of this debt, Talbott being the principal, and Woodford and others sureties for it, on the principle that co-sureties must contribute to the common burden. We do not concur in this position. True, the judgment binds the land of each surety, but the debt is joint and several; the land of each is bound for all, and this right to contribution is an equity existing between the sureties, springing from their relation to each other as regards the debt, and the creditor has nothing to do with it, and certainly is under no obligation to enforce it for the benefit of the sureties as between themselves. He has no relation to it, save that it grows out of his debt. I shall not say that a court of equity in a case where A. has a judgment against B., principal, and C. and D., sureties, and sues to enforce the lien against his land, might not require A. to bring in D.'s land. But surely in a case like this, a proceeding to subject Woodford's land to divers debts due divers parties, and having different rank as to priority, it would be going far to require plaintiff to prepare the cause so as not only to adjudicate the rights of creditors as to Woodford's land, but also bring in lands of other sureties, adjudicate the rights of lienors as to them, and not only that, but settle any litigation that might on any conceivable ground arise as between the co-sureties as to the right to contribution, thus trying a suit between the co-sureties in which the creditors of Woodford had no interest, and spinning out the litigation on matters collateral to the main subject to an indefinite extent. There can be no imperious rule of equity to call for this.

A solid rule of equity practice is that a decree settling

rights between co-defendants can be based only on the
pleadings and proofs between plaintiffs and defendants;
that where a case is made between co-defendants, by evi-
dence based on pleadings between plaintiff and defendant,
there may be a decree between co-defendants; but where
there are no such pleadings there can not be. As Judge
JOHNSON said in *Worthington* v. *Staunton*, 16 W. Va. 232,
this rule is a necessity. If it is not adhered to, the admin-
istration of justice will become exceedingly difficult, if not
impossible, in many cases. It can not be known when,
where, or how a chancery cause will terminate if all parties
having any interest in the subject-matter of the bill, and
therefore necessary defendants, can save expense and time
by filing their answers and cross-bills in the cause, litigat-
ing all their differences which are in any way, however re-
motely, connected with the subject-matter of the bill. The
collateral issues might be interminable. See *Hoffman* v.
*Ryan*, 21 W. Va. 415. These co-sureties were made parties,
and were necessary parties, because they were sureties and
for other reasons, and, being parties, when the debt should
be established and its amount fixed, the decree would be
conclusive as between them as to those points, and in any
suit which might arise between them afterwards to enforce
contribution it would have its legal effect; but there was
no call on the court to declare in the decree that there was
a right of contribution, or to bring in lands of other debtors
because of that right, and settle the liens on them. The facts
on which such contribution rests were not in the bill, and
it could not be based on the pleadings as between plaintiffs
and defendants. The bill does not state the relation of
surety and principal, or that the co-sureties owned land.
The answer of Johnson and Harvey states, confessedly as
new matter, that Talbott was principal and James M.
Woodford and others sureties, in the judgment mentioned,
and that certain of them owned land.

I do not see that this contention of counsel for appellants
is justified on the doctrine of substitution that where one
creditor has recourse to two funds for payment of his debt,
while another has only one of the common debtor, the
former must exhaust the security first on which the other

has no claim. This is property of other parties, and to subject it would be decreeing between co-defendants on a case not made by the bill; and, besides this consideration, it would be improper and inconvenient; tend to delay the creditor unreasonably by concerning him with matters foreign to his interests and purposes in the proceeding; greatly complicate and protract the litigation; and is by no means imperative; and would establish a practice very objectionable and often well-nigh impracticable. Therefore, I dismiss this assignment as not well made.

As to the third assignment of error, in as much as it involves no important principle of law, I need not detail facts, but simply say that the costs of Heatherly in his suit against the bank, brought to stop the collection out of his property of the one thousand seven hundred and eighty one dollars and eighty cents debt, a controversy purely between him and the bank, and in which he failed substantially, ought not to be charged to James M. Woodford's property, to the prejudice of his creditors. His suit obtained the construction of the contract, but for his own purposes, and that does not justify this feature of the decree, and it should be avoided in a future decree. Having the case before us for other purposes, though it is a question of costs, we ought to direct this matter to be rectified. *Jones* v. *Cunningham,* 7 W. Va. 707; *Richardson* v. *Donehoo,* 16 W. Va. 687.

The fourth assignment of error is that the decree absolves the trustees from one thousand seven hundred and sixty one dollars and forty five cents on payment of one thousand four hundred and fifty two dollars and twenty five cents, and does not charge them with one hundred dollars as lost by them. One provision of the decree applies out of the one thousand seven hundred and sixteen dollars and forty five cents found in the trustees' hands, five hundred and twenty four dollars and two cents on the judgment against Talbott and others, leaving one thousand two hundred and thirty seven dollars and forty three cents; and another provision applies this on the bank's judgments of one thousand, four hundred and ninety six dollars and forty eight cents, and one thousand four hundred and eighty five dollars, giving the former six hundred and forty dollars and

thirteen cents, and to the latter five hundred and ninety seven dollars and thirty cents; and another clause recites that the trustees had paid one thousand four hundred and fifty two dollars and twenty three cents on liabilities of the bank, and discharges them from liability to the bank and Woodford. Now, as the whole one thousand seven hundred and sixty one dollars and forty five cents in their hands is thus applied on bank-debts, thus inuring to the benefit of Woodford, if such application were proper, I can see no error to the prejudice of appellants in discharging the trustees from liability to the bank and Woodford. But the application being erroneous, it follows as a consequence that the discharge of the trustees on that basis is erroneous. I do not think the trustees should be charged with the one hundred dollars collected by Woodford, and not accounted for by him to the trustees. The contract empowers him to collect, does not make the trustees responsible for his default, and the former decision of this Court does not. In addition he was insolvent.

The fifth assignment of error is that the court erred in giving preference to the one thousand five hundred dollar debt over the one thousand dollar debt, both secured to National Bank of Kingwood by the deed of trust from Woodford to Woods, trustee. Unless there be in the large record some fact not noted by me, or by counsel, there is nothing to justify such discrimination. The Code, c. 72, s. 6, provides that the proceeds of sale under a deed of trust shall, after payment of costs, including commission, be applied *pro rata* to the payment of the debts, unless the deed otherwise provide. This deed gives no preference. It contains nothing to take the case out of said statute rule of ratable application. Surely the fact that in specifying the debts secured one debt is mentioned first can not do so; and surely the fact that after describing them the deed reads, "and whereas said Woodford is desirous of securing the payment of the same as they severally become due," coupled with the fact that the one thousand five hundred dollars first fell due, can not give any preference. The commissioner gives these debts the same rank; there is no exception to his report, and the decree confirms it yet departs from it in this respect.

The decree complained of is reversed, and the cause remanded to the Circuit Court for proceedings according to the principles herein indicated, and in other respects according to principles governing courts of equity.

REVERSED.   REMANDED.