# CHARLESTON.

GALLATIN LAND, COAL & OIL CO. *v.* DAVIS *et al.*

(BRANNON, JUDGE, *concurring*).

Submitted June 16, 1897—Decided November 27, 1897.

1. SPECIFIC PERFORMANCE—*Death of Vendor—Parties.*

    Where a bill is filed for the specific performance of a contract for the sale of a tract of land, and the vendor of said land has died since the date of the contract and before the institution of the suit, his heirs at law are necessary parties to the suit. (p. 115).

2. DECREE—*Reversal – Bill of Review.*

    The provisions in chapter 134 of the Code with reference to reversing a decree on a bill taken for confessed on motion do not preclude a party from resorting to a bill of review. Said provisions are merely cumulative. (p. 113).

3. APPEAL—*Decree—Reversal.*

    It is immaterial in what manner it is brought to the attention of this Court that the decree complained of was rendered in the absence of proper parties; the cause will be reversed and remanded, in order that proper parties may be made. (p. 113).

4. RULES—*Rule Proceedings.*

    Setting case for hearing at rules. Rule proceedings. (p. 119).

Appeal from Circuit Court, Jackson County.

Bill by the Gallatin Land, Coal & Oil Company against Mary Davis and others for specific performance of a contract. Defendants appeal from a decree in plaintiff's favor, and from a decree dismissing their bill of review.

*Reversed.*

JOHN H. RILEY, for appellants.

WM. A. PARSONS and GEO. E. PRICE, for appellee.

ENGLISH, PRESIDENT:

On the 23d day of January, 1893, the Gallatin Land, Coal & Oil Company, a corporation under the laws of the state of Maine, and Edward E. Conant, trustee, and general manager of said corporation, filed its bill in the circuit court of Jackson county against Mary Davis, S. F. Shinn, W. K. Stout, and John H. Riley praying the specific performance of a contract dated April 30, 1872, between Lot M. Morrill, by Gideon D. Camden, his attorney in fact, of the first part, and Mary Davis, by W. Davis, her agent, of the second part, by which contract said Morrill, acting by Gideon D. Camden, his attorney in fact, sold to Mary Davis ninety-seven acres of land for the sum of three hundred and seventy-five dollars, which purchase money was to be paid as follows: Sixty dollars in six months, and the balance in installments of one hundred and five dollars each in one, two, and three years, with interest; and when the first payment was made said Morrill agreed to make to said Mary a special warranty deed for said ninety-seven acres of land, retaining a vendor's lien for the unpaid purchase money and the costs of entering up the judgment, not to exceed ten dollars, and the said Morrill was to discontinue his suit for a tract of one thousand three hundred and thirty acres known as "Savary's No. 8," on Cox's Fork of Parchment Fork of Mill creek, for the recovery of which from James Davis he had instituted a suit in the district court of the United States at Charleston as to the land within said tract of one thousand three hundred and thirty acres in possession of George W. Shinn conveyed to him by James Davis, or make to said Shinn a quitclaim deed therefor. On the 16th day of November, 1893, a decree was entered in the cause, in which it is stated that the cause came on to be heard upon the summons duly served upon the defendants therein more than thirty days prior to the first day of the term upon the bill and exhibits therewith filed, decree *nisi* as to all of the defendants, and the bill taken for confessed, and set for hearing at the rules. Upon motion of the plaintiffs a surveyor was appointed to go upon the tract of ninety-seven acres mentioned in the bill for the purpose of locating and returning

to the court a description of said tract of land by metes and bounds, which motion was allowed, and an order of survey was directed. On the 14th day of November, 1894, a final decree was rendered in the cause, again setting forth that the process had been served upon the defendants; that there was a decree *nisi* and the bill taken for confessed, and the cause set for hearing at the rules; and that, the defendants still failing to appear, demur, plead, or answer the bill, the same was taken for confessed against the defendants, and each of them, and, the cause being submitted to the court on motion of the plaintiffs, the court was of the opinion that the plaintiffs were entitled to the relief prayed for in their bill, and decreed that the plaintiffs recover against Mary Davis eight hundred and fifty-nine dollars and sixty-two cents, the amount of purchase money, with interest to that date, and found that the tract of land described in the contract contained one hundred and nineteen and one-half acres instead of ninety-seven acres, and directed that, unless the defendants, or some of them, paid to the plaintiffs the said sum of eight hundred and fifty-nine dollars and sixty-two cents, the land should be sold by commissioners in the manner therein provided. On the 13th of March, 1895, the defendants Mary Davis, S. F. Shinn, and W. K. Stout presented a petition, which was prayed to be taken and treated as a bill in the nature of a bill of review, which was ordered to be filed, and on August 14, 1895, the plaintiff demurred to said bill of review, which demurrer was sustained, and said bill of review was dismissed. Said Mary Davis, S. F. Shinn, and W. K. Stout obtained this appeal from each of said decrees.

It is contended by counsel for appellee that the decree of November 14, 1894, settled all of the principles of the cause, and established the rights of the parties, and was, therefore, a final decree; that it certainly was a decree from which an appeal could be taken, if it had not been taken *pro confesso*; and it is settled in this State that such decrees are final, citing and relying on the case of *Core* v. *Strickler*, 24 W. Va., 689, in which it is held that: "A decree made upon the hearing on the merits, which settles and adjudicates all the matters in controversy between

the parties, is such a final decree that a bill of review will lie to it, although much may remain to be done before it can be completely carried into execution." Also the case of *Fowler v. Lewis Adm'r.*, 36 W. Va., 130, 131, (14 S. E. 447.)

It is further contended that, said decree being a final decree and none of the defendants having appeared in any manner by filing plea, answer, or demurrer, the defendants cannot appeal for any alleged errors in said decree so rendered *pro confesso* until after they have made a motion in the court below for the correction of said errors in the manner prescribed by s. 5, c. 134, of the Code; and that, if an appeal is granted from said decree *pro confesso*, it will be dismissed as having been improperly awarded. It is further contended that the defendants, instead of making the motion as provided by statute, filed a petition, which they asked to be taken and treated as a bill in the nature of a bill of review, when by the enactment of said statute (ss. 5, 6, c. 134), the chancery practice in this State was materially changed from what it had been before such statute, and that, even if a bill of review would have been proper to correct errors in a decree taken *pro confesso*, yet, as this statute provides that the court below might, upon motion, reverse such decree "for any error for which an appellate court might reverse it if the following section was not enacted, and give such judgment or decree as ought to be given," that it seemed clear that this remedy by motion was intended to take the place both of the remedy by appeal and by bill of review, because the language seems broad enough to permit the correction of any error which the lower court had committed in rendering the decree, and therefore embraces all errors which could be corrected by bill of review. This Court, however, in the case of *Bank* v. *Shirley*, 26 W. Va., 563, held (fourth point of syllabus): "An error in the calculation of interest can be corrected by motion on notice under s. 5, c. 134, of the Code. The statutory remedy, however, is cumulative, and has not abolished petition for rehearing or bills of review, which still may be had according to the course of equity in the same manner as before the enactment of the statute." In the case of *Kendrick* v. *Whitney*, 28 Grat. 646, it

is held (point 4 of syllabus), after speaking of the motion to correct error in a judgment by default, that "the statutory remedy is cumulative, and has not superseded or abolished petitions for rehearing, which may still be had according to the course of equity in the same manner as before the enactment of that statute." So, also, in the case of *Sturm* v. *Fleming*, 22 W. Va., 404, this Court held that in chancery pleadings it is the disposition and practice of courts of equity to regard substance rather than mere form or name, and to so mold and treat the pleadings as to attain the real justice of the case; consequently a complaint styled by the pleader a "petition," which has all the elements of a bill in the nature of a bill of review, will be treated as such if it has the necessary parties with sufficient averments and prayer for relief. Following the rule of practice announced by these decisions, we may treat the petition of the appellants filed in this cause as a motion under the statute to set aside the decree complained of, or as a petition for a rehearing.

The first error assigned and relied on by said petitioners was because the proper parties were not before the court, and this also is the first error relied on for this appeal. This bill, as we have seen, was filed to specifically enforce a contract which purports to have been made by and between Lot M. Morrill, by Gideon D. Camden, his attorney in fact, and Mary S. Davis, by W. Davis, her agent. It is alleged in the bill, and not denied, that said Lot M. Morrill was dead at the time said bill was filed, but it nowhere appears who are his heirs at law, and they are not parties to the suit; and, although it is alleged in the bill that said Morrill held several thousand acres of land as trustee for the Gallatin Land, Coal & Oil Company in the county of Jackson and other counties of West Virginia, yet the contract upon which this suit was predicated was made between Lot M. Morrill, acting by G. D. Camden, his attorney in fact, and Mary Davis, and on the face of the agreement it is stated that he was the owner of one thousand three hundred and thirty-two acres of land on Cox's fork of Parchment Fork of Mill Creek, and that Mary Davis claimed ninety-seven acres thereof under a deed from James Davis to Ellen Welch. This agreement is filed as

an exhibit with the bill, and is made a part thereof, and, if the allegations of the bill are true, was made on the 30th of April, 1872, between said Camden, as attorney in fact for and in the name of said Morrill, with the defendant Mary Davis. It was further agreed in said contract that the said Morrill should sell, and he did thereby sell, the said tract of ninety-seven acres to the defendant Mary Davis at the price and for the consideration of three hundred and seventy-five dollars. It was also thereby agreed that the defendant Mary Davis should purchase and that she did thereby purchase said tract of ninety-seven acres of land from Morrill. It was further agreed that said Morrill was to make the defendant Mary Davis a deed containing a covenant of special warranty conveying said tract of ninety-seven acres to her. A copy of said agreement is exhibited with the bill; but it is nowhere intimated in any portion of the contract that any person had any interest in said land other than Lot M. Morrill, who is stated to be the owner on the face of the agreement. The said Morrill, in said agreement, contracted to discontinue a certain suit as to the land within his said tract of one thousand three hundred and thirty acres in possession of George W. Shinn, which was conveyed to him by James Davis, or make said Shinn a quitclaim deed therefor. Now, while it is true that the bill alleges that the Gallatin Land, Coal & Oil Company owns many thousand acres of land in Jackson and other counties in West Virginia and that Lot M. Morrill made his certain declaration of trust, whereby he declared himself to be the trustee of said corporation, and agreed to hold said land in trust for said corporation, and that he made Gideon D. Camden his attorney in fact, and, among other things, authorized him, as such attorney and agent of said Morrill, to make deed for certain portions of said land, yet said Morrill was not thereby authorized to enter into a contract in his individual capacity, claiming to be owner of the land, acting by Camden, his attorney in fact; and, if he did make such contract, acting by his said attorney in fact, it cannot well be perceived what right the said corporation had to file a bill for its specific performance. The plaintiffs allege that they are willing to make and file with their bill on behalf of said corporation an apt

and proper deed to Mary Davis or other persons entitled thereto, at any time they are required so to do, but her contract appears to have been made with said Morrill, and she had no right thereunder to demand a deed from said corporation. It is alleged that the plaintiff Edward E. Conant is trustee and general manager of the plaintiff company, and is the grantee of the devisees and heirs at law of said Morrill. It is not, however, alleged who said heirs and devisees are, or when he became grantee of said devisees and heirs,—whether before or since the date of the contract with Mary Davis. The identity of the ninety-seven acre tract is by no means certain, and, so far as it appears from the contract sued on, the defendant Mary Davis could have no recourse in case of eviction save upon the heirs and devisees of Morrill, for the reason that this contract appears to have been made directly with Morrill, acting through his attorney in fact; and the devisees and heirs of said Morrill should be made parties to this suit, in order that the decree may be binding and final as to them with reference to this tract of land which the bill seeks to sell. In support of this proposition, see *Morgan's Heirs* v. *Morgan*, 2 Wheat. 290; *Roberts* v. *Marchant*, 1 Hare, 547; *Mott* v. *Carters' Adm'r*, 26 Grat. 127.

The bill further alleges that said ninety-seven acre tract of land is the same tract which said Mary Davis conveyed to James Lester on April 8, 1874, and which said James Lester and wife, on June 10, 1876, conveyed to John H. Riley, and of which Riley and wife on September 5, 1881, conveyed eighty-eight acres, part thereof, to S. F. Shinn, with covenants of general warranty, and on the same day conveyed the residue thereof to W. K. Stout, which tract in said deed is described as containing one hundred and forty-one and one-half acres, which deeds are alleged to be of record in said county. Mary Davis, S. F. Shinn, and W. K. Stout, in their petition filed in this cause, allege that it is not true that the two hundred and fifty acres of land in the bill mentioned was, in April, 1872, a part and parcel of a much larger tract in said county of Jackson, then owned in fee simple by said corporation and held in trust as aforesaid by Lot M. Morrill. On the contrary, they aver that the two hundred and fifty acres conveyed by James

Davis to Ellen Welch were held by said James Davis by a good and sufficient fee-simple title under which he and those under whom he claimed had actual possession, and paid all taxes charged and chargeable thereon for fifty years or more prior to the date mentioned, and they claimed that John H. Riley still owns thirty-four acres of said land. The said ninety-seven acres is alleged in plaintiff's bill to be part of two hundred and fifty acres of land, the same being part of the land conveyed by Ellen Welch to Mary Davis. This raised a question as to the identity of the land, and as to the source from which Mary Davis derived title, in which the heirs and devisees of said Lot M. Morrill are interested as well as James Lester and John H. Riley; and in my opinion, said heirs and devisees of Lot M. Morrill, as well as James Lester and John H. Riley, are necessary parties to this suit, and for these reasons the decree complained of is reversed, and the cause remanded, in order that said parties may be made defendants.

BRANNON, JUDGE, (*concurring*):

I may be in error, but the more I reflect the more averse I become to the reversal of a decree giving plaintiff a decree against the land for its purchase money—a just debt —for reasons assigned by JUDGE ENGLISH. I grant that the court must have the legal title before it in order to confer it upon the purchaser, and that Morrill's heirs would be necessary parties had they title; but they have not, but it is in Conant, a plaintiff. The bill was taken for confessed. It alleges that Morrill sold the land to Davis; that Morrill owned the land as trustee for the Gallatin Company; and had executed a deed declaring such trust; that he was dead, and that Conant was trustee for the company; and that the devisees and heirs of Morrill had made a deed conveying to Conant, as trustee, "all right, title, and interest which they as heirs and devisees, have under the will of said Lot M. Morrill and as descended to them by law;" and that Conant had become, as trustee, substituted "to all rights, powers, duties, and authority which said Morrill has as trustee in his lifetime." Now, what scintilla of title or interest in the suit had Morrill's heirs under these

facts, shown by the bill, and taken for true? Why make
them parties? The estate of Morrill had no title to pur-
chase money or the land. Riley was not a necessary party,
and therefore the dismissal as to him amounted to nothing.
The bill says that Morrill sold to Davis by executory con-
tract, and then Davis conveyed to Lester by deed, and
Lester conveyed to Riley by deed, and Riley conveyed to
Shinn by deed, and, as Shinn is a party, the land is followed
into his hands, and all the right sold Davis by Morrill is
found in his hands, and will pass, under the sale, the equit-
able title. Why make Lester and Riley parties? They
have no title in them. Do you answer that they sold un-
der warranty and ought to be parties to be bound by the
decree? Morrill has nothing to do with the rights between
Davis, Lester, Riley, and Shinn growing out of their sales
from one to another. The plaintiff cannot be called on to
sue in such manner as to estop Lester and Riley from de-
nying liability to Shinn under their warranties. As war-
ranties run with the land, this rule would require a plain-
tiff to make all grantors in the line of title parties. That
is matter foreign to the case as between Morrill's assignee
and Morrill's vendee, Davis. This is purely a suit grow-
ing out of a sale from Morrill to Davis, and the adjustment
of rights between these intermediate alienees growing out
of other and different transactions, having no relation to
the sale from Morrill to Davis, is utterly foreign to this
suit. You cannot give relief between co-defendants un-
less it grow out of the pleading and proof between plain-
tiff and defendant. *Bank* v. *Woodford*, 34 W. Va., 480, (12
S. E. 544). But it is said that Davis had another title.
What of it? When she brought in the Morrill title, the
two titles united in her ceased to be adverse, and she con-
veyed both to Lester, Lester to Riley, Riley to Shinn. No
matter whether the decree would sell both or not, no one
has right to compel Morrill to bring in and adjudicate an
adverse title, for the reason that this is a suit based alone
on a sale from Morrill to Davis, and a contract between
them; and even if Morrill has sold with general warranty,
he would not have to bring in owners of adverse title as
parties, as adverse owners have a right to a trial by jury,
and the adverse title is foreign to the subject in controversy

between Morrill and Davis. But Morrill contracted for only special warranty. Outstanding superior title in a third party would not bar him from relief against the land. He is entitled to look to the land he sold. And particularly is this so, seeing that both titles united in Shinn. Am I to be told that perhaps Riley sold to Shinn with warranty, and, as this suit is to fix a lien on the land which would break the warranty, Shinn is entitled to call on Riley to defend the title, and to have him before the court, so as to bar him from contesting the fact of such lien when sued on his covenant of warranty? Why, that is a matter between them, and Morrill has nothing to do with it. "A person is not a proper party between whom and the plaintiff there is no proper privity or common interest, but his liability is to another person" (Story, Eq. Pl. § 227', even if he be consequentially affected (*Id.* § 226). It is not enough that he is interested in the question adjudicated, if there can be no decree against him. *Id.* § 231. There could be no decree against Riley, if a party. In a bill "for specific performance of contract of sale of realty the only proper parties, in general, are the parties to the contract itself." *Id.* § 226b; Bart. Ch. Prac. 214. "No person need be a party who claims under a title paramount to that brought forward to be enforced in the suit." Story, Eq. Pl. § 230; Bart. Ch. Prac. 208, 214.

I intended to dissent from a reversal, but on examination I realize that the point made by the petition as to irregularity in the proceedings at rules is well taken, and calls for reversal. At rules there was an entry of process served on all defendants except Mary Davis and J. H. Riley, and alias summons was awarded as to them, and the case was continued for bill, and at subsequent rules bill was filed, and decree *nisi* as to all served, and alias again to Davis and Riley, and no entry at any rules taking bill for confessed as to those served with process, and none setting case for hearing. Somehow, however, it got upon the hearing docket, as an order was entered dismissing as to Riley and remanding to rules for process as to Davis. Process was subsequently served on Davis, and not an entry was made at rules of decree *nisi*, or bill taken for confessed, or setting cause for hearing. In fact, the case was not af-

terwards put on the rule docket. At the term at which the final decree was entered, suggestion was made by plaintiff that rules had not been indorsed on the bill and then entries were indorsed on the bill as follows: "April rules, 1893, process returned served on Mary Davis." "May rules, 1893, bill taken for confessed, and set for hearing." This will not do. This suggestion revealed the error at rules. There was no entry in the rule docket. The court, in its decree, ordered the bill taken for confessed; but the point is that never, at rules, was the case set for hearing. A defendant is bound to attend at rules when summoned; but I have yet to learn that a case can be entered on the hearing docket, and heard, without an entry at rules setting it for hearing, if the defendant do not appear, and thereby waive the error. Proceedings at rules must end and the case go on the hearing docket before there can be decree. Defendant is not bound to attend at term until the case ends at rules, and is ordered to go on the hearing docket. If an entry is made setting the case for hearing, he is bound to attend term; but, if not, he has the right to understand that the plaintiff will not ask a decree, as he has not set the case for hearing. The entry setting the case for hearing is indispensable. These proceedings at rules, especially the order to hear the case, are no empty formality. These rule proceedings are carefully provided by statute to make cases ready for hearing. Bart. Ch. Prac. 241, says: "Proceedings at rules should be regularly and exactly kept; and, if any mistake is made, though they cannot be corrected at the next rule day, yet it is the duty of the court at the next term to have the correction made, and for that purpose to remand the case to rules, in order that proper proceedings may be had therein." Now, a court cannot for the first time in term take a bill for confessed, and set for hearing. It may take for confessed, but not set for hearing, unless defendants have appeared. Section 50, chapter 125, Code, tells us just when, at rules, a plaintiff or defendant may have a case set for hearing, showing its importance. Instead of the court's ordering entries to be made on the bill, which would be no part of the record, and amount to nothing, it should have remanded the case to

rules, where, in fact, it was, with direction to mature the cause properly for hearing. If there is no appearance it is as much the duty of the court to see that the case has been set for hearing as to see that process has been served. It cannot hear until the case is ready for hearing. And even this entry on the papers related only to Mary Davis, and the case was never set for hearing at rules as to other defendants, and Shinn was the owner of the land. For this reason I agree to reverse the decree. These matters have seemed to me to be of sufficient importance in practice to call for this note.

*Reversed.*