# CHARLESTON.

| 56  257|
|_57  490|

### WEIMER, WRIGHT & WATKINS v. TALBOT.

Submitted June 16, 1904—Decided November 22, 1904.

1. SUBROGATION—*Assignee.*

The right of a surety, who has paid the debt of his principal, to be subrogated to the rights and remedies of the creditor against his co-sureties, may be assigned to, and, under the assignment, enforced by, the assignee. (p. 261).

2. DECREE—*Lien—Proof of Satisfaction of Lien.*

In the absence of evidence to the contrary, decrees adjudicating liens against certain land, ordering a sale of the land, confirming the sale thereof and ordering payment of the liens out of the proceeds by the special commissioners into whose hands the proceeds of sale have come, in sufficient amount to satisfy a certain one of the liens so fixed and all others prior thereto, is sufficient proof of satisfaction, out of the proceeds of the land, of the lien in question. (p. 262).

3. STATUTE OF LIMITATIONS—*Judgment Lien.*

Where the judgment has been kept alive by the insuance thereon of successive executions, as provided by section 10 of chapter 139 of the Code, and finally satisfied out of the lands of one of several co-sureties for the debt out of which the judgment originated, and a suit by the assignee of such surety, holding his right of subrogation against other sureties, brings his suit for enforcement of that right against the lands of one of the other sureties, within ten years from the return day of the last execution issued on the judgment, and the rights of no third parties have intervened, which will be prejudiced by the enforcement of the lien by way of subrogation, such suit is not barred by either the statute of limitations or *laches.* (p. 264).

4. SUBROGATION—*Evidence—Oral Proof of Payment not Sufficient.*

An allegation, by way of defense to such a suit, of payment made by a third co-surety of his portion of the judgment, is not supported by oral testimony of the existence of a release of the judgment as to the land of such co-surety, without production of the release or a copy thereof showing payment by him, or proof of satisfaction of the lien as to such land in some way other than by payment out of the proceeds of the lands of the other surety, sold as aforesaid for the satisfaction thereof. (p. 266).

5. JUDGMENT LIEN—*Oral Proof not Sufficient—Lost Papers.*

Allegations, by way of defense to such a suit, that there remains in the hands of a special receiver in a chancery cause against still another surety, brought for the enforcement of liens against his lands, a fund, which has not been disposed of, derived from rents accruing under a decree by which the lands of such surety were rented, and that the lands of such surety were sold in such suit for an amount more than sufficient to pay all of the liens thereon, and that the judgment in question was barred from participation in the proceeds thereof by the failure of the creditor to assert it in said suit, are not sustained by oral testimony, based on information only, to the existence of such fund, in the hands of such special receiver, and to the understanding of the witnesses testifying, that there was a surplus of the proceeds of the lands after satisfying all the judgments asserted in said suit, none of the decrees in said suit being produced in support of the allegation, notwithstanding the non-production of the papers in the cause is justified by proof of their loss. (p. 267).

6. Co SURETY—*Liability.*

The measure of liability of the co-surety in such case is the whole amount of principal and interest paid for him, with interest thereon from the date of payment. (p. 268).

Appeal from Circuit Court, Barbour County.

Bill by Weimer, Wright & Watkins against James .W Talbot
and others.  Decree for defendants, and plaintiffs appeal.

*Reversed.*

J. HOP WOODS, for appellants.

ICE & ICE and C. F. TETER, for appellees.

POFFENBARGER, PRESIDENT:

The assignability of a right of subrogation against a co-surety,
proof of payment of a judgment out of the proceeds of real
estate of the assignor judicially sold to satisfy it, and mainten-
ance of the lien of the judgment by issuance of executions there-
on are the important subjects for consideration in disposing of
this cause.

On the 1st day of February, 1886, the Farmers' Bank of Phil-
ippi obtained a judgment, in the circuit court of Barbour coun-
ty, against J. W. Talbot, principal debtor, and John F. Wood-
ford, J. E. Heatherly, Henry A. Gall, J. M. Woodford, Jacob W.
Robinson and Anthony T. Daniels, sureties, for the sum of $1,-
781.80, with interest thereon from January 30, 1886, and $3.75
costs.  Talbot was then insolvent.  Execution was immediately
issued, went into the hands of the sheriff February 15, 1886, and
was returned unsatisfied by order of plaintiff's attorney on Feb-
ruary 27, 1886.  One month later, J. M. Woodford assigned and
transferred all his personal property to trustees, by a written con-
tract which may be seen by reference to the case of *Heatherly* v.
*Bank,* 31 W. Va. 70, 72.  On the 10th day of May, 1886, said
bank instituted a suit in equity against said J. M. Woodford
and numerous other defendants, some of whom are judgment
creditors, for the purpose of subjecting Woodford's real estate
to the satisfaction of the liens thereon.  On the 10th day of July,
1886, after the commencement of said suit by the bank, Weimer
Wright and Watkins recovered a judgment against said Wood-
ford for $354.87 and $12.20 costs, and, on the same day, Greer
and Laing obtained a judgment against him for $983.64 and
$12.20 costs.  On this last judgment $323.62 was paid March 5,
1887.

Sometime in the year 1887, James E. Heatherly, one of the
sureties for the Talbot debt, commenced a suit in equity to re-

strain the Bank of Philippi from enforcing payment of its
judgment against him and obtained a decree on the 22d day of
July, 1887, adjudicating that the personal property assigned to
said trustees by Woodford should be treated as a payment *pro
tanto* of judgments, debts and liabilities due from Woodford to
said bank, and that the principal debtor and all the sureties ex-
cept Heatherly should pay the said judgment of $1,781.80, then
amounting, with its interest, to $1,981.74, and awarding execu-
tion thereon.  On the 30th day of July, 1887, the execution was
issued, and, on the 3rd day of October, 1887, returned unsatisfied
in consequence of an appeal from the decree awarding it.  The
nature of that decree and the disposition of the appeal from it
will appear by reference to *Heatherly* v. *Bank,* 31 W. Va. 70.
Pending these proceedings, Greer and Laing commenced a
chancery suit against Woodford to enforce satisfaction of their
lien, and, after the decision of this Court, in *Heatherly* v. *Bank,*
the three causes, *Farmers' Bank of Philippi* v. *Woodford et als,*
*Heatherly* v. *Bank* and *Greer and Laing* v. *Woodford et als,* were
heard together, on the 19th day of July, 1889, when a decree fix-
ing the liens upon Woodford's property and directing a sale
thereof was entered.  Sale was afterwards made and confirmed by
a decree entered on the 30th day of October, 1889.  From these
decrees an appeal was taken and they were reversed and the
causes remanded, as shown in *Farmers' Bank* v. *Woodford,* 34
W. Va. 480.  The modifications of the decrees, directed by this
Court, related to the priorities of liens and distribution of pro-
ceeds of the sale of the real estate.  The sale itself was not dis-
turbed.  Upon the mandate of this Court, the circuit court, on
the 4th day of June, 1891, made another decree, altering the
order of payment and directing a distribution of the proceeds of
sale to the creditors in the order of preference thereby fixed.

Out of the proceeds of the personal property which went into
the hands of Teter and Gall, trustees, the circuit court, by its
first decree, applied $524.02 on the judgment of $1,781.80 as of
the 26th day of September, 1887.  This application of the trust
fund was one of the errors corrected on the appeal.  By the last
decree, it was ascertained and determined upon the mandate of
this Court that the Farmers' Bank of Philippi had the sixth
lien upon the real estate of James M. Woodford for the sum of
$1,961.95 with interest from September 26, 1887, on account of

said judgment of $1,781.80, subject to a credit of $594.13, as of November 4, 1889, paid by John F. Woodford, instead of the eighth, as determined by the first decree. By said decree, the court ascertained that the judgment of February 1, 1886, with interest, costs, and damages, amounted, on the 19th day of July, 1889, as to James E. Heatherly, to $2,357.69. Execution for that amount was awarded against him and was issued on the 8th day of July, 1891, and returned September 7, 1891, "no property found." It was also ascertained that the judgment, as to all the other defendants was of the original amount, subject to the credit aforesaid and execution was awarded against them accordingly, and issued on the 8th day of July, 1891, and returned on the 26th day of September, 1891, by order of the attorney for the plaintiff. Prior to its return, the officer made this memorandum on it, "I levied this execution on money in the Tygart's Valley Bank sufficient to pay exe. on September 5, 1891."

Early in these proceedings, to-wit, October 22, 1887, James M. Woodford executed to Greer and Laing and to Weimer, Wright and Watkins a written assignment of "whatever right or cause of action" he had or might have "for contribution or subrogation or otherwise" against his co-sureties or either of them "in the judgment for $1,781.80 with cost," etc. These assignees brought this suit on the 28th day of March, 1900, less than nine years from the date of the issuance of the last execution on the judgment, to be substituted and subrogated to the rights of James M. Woodford against John F. Woodford for the amount paid on said judgment out of the proceeds of the sale of said James M. Woodfords' real estate in excess of his equitable portion thereof, which the plaintiff's allege was one-half, less the payment of $594.13 paid by said co-surety, the principal debtor and all the sureties except James M. Woodford and John F. Woodford having been insolvent, by reason of which nothing was collected from any of them on account of said judgment. There is some contention of payment made by Heatherly, one of the sureties, and of ability to pay by the estate of Robinson, another one of the sureties, but these questions, for convenience, will be postponed for the present.

That an equitable claim, such as the right of a surety, who has paid the debt of his principal or more than his equitable part

thereof, to be subrogated to all the rights and remedies of the creditor against his co-sureties, is an equitable demand for money, which may be assigned in equity, would seem to be too plain to require any citation of authority. Although originally a matter of equitable cognizance, contribution between sureties long ago became a legal right, enforcible by courts of law. Brandt on Sur. & Guar. section 289. The right to recover at law seems to be limited to an aliquot part of the debt, to be determined by a division according to the whole number of co-sureties, solvent and insolvent. But in equity a surety who pays the debt of his principal is entitled to have, as contribution from his solvent co-sureties, a *pro rata* amount of the sum paid by him, based upon the number of solvent co-sureties, excluding the insolvent ones. Brandt on Sur. & Guar. section 288; Story's Eq. Pl. section 496; *Preston* v. *Preston*, 4 Grat. 88; *Dent* v. *Waits Admr.*, 9 W. Va. 41. Whether the right in this case is legal or equitable is immaterial. As an equitable demand for money an assignment of it is enforcible in a court of equity. However, authority for the proposition is not wanting. 27 Am. & Eng. Enc. Law, 271; *Pierce* v. *Garrett*, 65 Ill. App. 682; *York* v. *Landis*, 65 N. C. 535; *Bank* v. *German*, 3 Pa. St. 300; *Hare* v. *Hadley*, 54 N. J. Eq. 545.

It is not upon non-assignability of the right, however, that the defense is based. One contention is that payment of the judgment out of the proceeds of the sale of James M. Woodfords' real estate is not proved. The decrees hereinbefore referred to are exhibited with the bill and relied upon as proof of payment. They show that the property was sold for $7,510. The debt in question was made by the last decree sixth in order of payment and these six liens amounted, in the aggregate, to only $2,834.66. There were judgments amounting to $4,186.72 which had preference of payment out of the fund arising from the sale of the personal property, but that fund amounted to $4,200.52 which was probably sufficient to cover all of these judgments with the interest thereon. Whether it was or not, the decree gave preference over the bank judgment to only one of these judgments, that of A. Block & Co. for $325.00 which was one of the first six liens and included in the total of $2,834.66. Hence, there can be no doubt as to the sufficiency of the proceeds of the sale of the real estate to pay the judgment in question. But it is urged that the

decrees do not show that it was paid. This contention is based upon certain recitals in the decrees. One is in the decree of July 19, 1889, and is as follows: "But no part of the proceeds of the sale of said lands shall be applied to the satisfaction of said debt of $1,757.79 until execution thereon has been issued and returned." This is the same judgment reduced by an erroneous application thereto of part of the proceeds of the personal property which was corrected on the appeal as above stated. Other recitals relied upon are in the decree of October 30, 1889. They are as follows: "But nothing herein contained shall be construed to release the said proceeds arising from the sale of said lands of James M. Woodford from the lien existing thereon in favor of the Farmers' Bank of Philippi for his equitable share of its demand against him and others for said sum of $1,757.79, when the same shall be ascertained after allowing him credit of $542.02, with interest thereon from the 26th day of March, 1886, paid by him upon the original judgment of $1,781.80, mentioned in said decree of sale. * * * * It is further ordered that whatever sum may be paid on said debt shall be applied as a credit on the said debt 8th in order of priority aforesaid, as of the date of payment thereof, nothing herein contained shall be so construed as to prevent said Special Receiver *fron* issuing other executions for the said debt or any balance thereof, and the amount so paid by said J. F. Woodford shall be a credit on said execution but shall be no release to him of the balance thereof." Another is in the last decree, carrying out the final decree of this Court and reads as follows: "In case execution shall issue upon the said debt of $2,359.89, against said Heatherly, subject to the credit of $594.13, as of November 4th, 1889, paid by J. F. Woodford, or in case execution shall issue against the other defendants therein for the sum of $1,781.80, and $3.75 costs with interest from February first, 1886, subject to the credit aforesaid, and the said debt shall be paid by any of the said defendants therein except by the principal J. W. Talbott, then in that event it is further adjudged, ordered and decreed that the proceeds of J. M. Woodford's lands in or which may come into the hands of said Commissioners applicable to the payment of said debt of $1,961.95, decreed to the Bank of Philippi, shall be liable to such co-surety for his equitable proportion of said debt for which he is liable, but all ques-

tions touching the amount thereof are reserved for such order of the court as may be necessary and *propper* to protect the rights of all the sureties in said judgment." From what has been said it must be apparent that the recitals in the first two decrees are now without effect, for they were reversed and held for naught in so far as they fixed the order of distribution of the money. The recital in the last decree does not stay the distribution of the fund, but only reserves to the court the power to enforce contribution among the sureties. This contention, however, is set at rest and shown to have no foundation by another part of the last decree which orders payment of the proceeds upon the debts in the order fixed by that decree. It reads as follows: "It is further adjudged, ordered and decreed that the said Commissioners, J. Hop Woods and Chas. F. Teter, shall withdraw the fund deposited in Bank by a former order herein and with it and the proceeds of the uncollected notes for the purchase money of the lands of the said James M. Woodford pay the debts so far as said funds will avail in the order herein mentioned; after payment of costs and expenses as herein provided." The stay in the decree of July 19, 1889, if not released by the action of this Court on the appeal is undoubtedly released by the decree of June 4, 1891. It shows conclusively that the money in the hands of the special commissioners was appropriated to and directed to be paid on this debt and it would be a most violent presumption to say that these commissioners, special officers of the court, had not paid over the money.

*Laches* and the statute of limitations are relied upon as other defenses. The answer to this is that the assignment made by Woodford to the plaintiffs carries the benefit of the judgment lien upon the property of John F. Woodford held by the Farmers' Bank of Philippi. On satisfaction of the judgment, James M. Woodford became entitled to all the rights and securities for that debt held by said bank. By his assignment to the plaintiffs, he invested them with the same rights, including the benefit of the lien of the judgment upon the lands of John F. Woodford. That lien was not allowed to lapse. As already shown, executions were issued upon it within two years, and before the expiration of ten years from the date of the first of the executions, another one was issued on the 8th day of July, 1891, by reason of which the lien would continue for another period of

ten years. Before the expiration of that time, this suit was
brought to enforce the lien. Hence, neither the statute of limi-
tations nor the principle of *laches* applies. Code, chapter 139,
section 10. The lien of a judgment ceases to exist when the
right to sue-out execution or to bring a *scire facias* or action
thereon is barred by the statute of limitations and not before.
*Shipley* v. *Pew,* 23 W. Va. 487. "Where execution issues with-
in two years as aforesaid, other executions may be issued on such
judgment without notice, within ten years from the return day
of the last execution issued thereon, on which there is no return
by an officer, or which has been returned unsatisfied." Code,
chapter 139, section 10. Since the lien exists as long as execu-
tion may issue on the judgment or *scire facias* or action thereon
may be had, neither the statute nor *laches* can bar it, for the lien
gives a clear right to satisfaction of the judgment, and equity
will enforce it. Its existence precludes the possibility of any
waiver, abandonment, lack of diligence or any other element of
*laches.*

That the right of subrogation may be lost by lack of diligence
in its assertion against third parties is not overlooked, but here
the rights of no such persons have intervened. Such lack of
diligence is termed *laches* in *Gring's Appeal,* 89 Pa. St. 336, but
it is more like an estoppel *in pais* than *laches.* *Laches* pre-
supposes a right of action founded upon contract or cause of
equitable relief between parties to a contract or a trans-
action out of which an equity arises. It is a failure to prosecute
in time that cause of action, or until after such changes in con-
sideration as render the enforcement of the right inequitable.
18 Am. & Eng. Ency. 97. Estoppel *in pais* extends beyond the
parties to the cause and operates in favor of third parties. Her-
man Est. & Res Jed. section 7, clauses 3 and 4; *Bates* v. *Swiger,*
40 W. Va. 420. However the principle may be classed, there
are no facts calling for its application.

Whether in the absence of a lien, the enforcement of which
gives equity jurisdiction as long as it exists, the right to contri-
bution in equity, where the plaintiff seeks more than an aliquot
part of the debt determined by a division by the whole number of
the sureties, because of the insolvency of some of them, is barred
by the five years statute of limitations, does not arise here. Part
of such claim would be a legal demand as to which there is con-

current jurisdiction in equity. As a whole, it would be a demand cognizable only in equity, unless the statute has wrought a change in that respect. Section 3 of chapter 101 of the Code gives to a surety having right of action for the amount paid by him a summary remedy. ·It says he may "by motion in the circuit court of the county, obtain judgment or decree against any person against whom such right of action exists for the amount so paid, with interest from the time of payment, and five *per centum* damages on said amount." Section 5 of said chapter says that if the principal debtor be insolvent, the surety against. whom a judgment or decree has been rendered, may obtain a. judgment or decree by motion in the circuit court, against any co-surety or his personal representative for his share, in law or equity, of the amount for which the first mentioned judgment or decree may have been rendered; and if the same has been paid, for such share of the amount so paid, with interest thereon from the time of such payment. The objects of these two sections. seems to be, not to do away with any distinction there may be between law and equity jurisdiction, but only to provide more simple and speedy remedies for the surety in both forums. Under the third section, he may have either a judgment or a decree by motion. Under the fifth section, he may have, by motion, either a judgment or decree, if a judgment or decree has been rendered against him on the contract for which he was surety. Construction of these provisions is not proper here, however. Nothing in the case calls for it.

The answer relies upon payment by Heatherly of his portion of the judgment, and an attempt is made to sustain this affirmative allegation by the evidence of a witness who says that the release deed book in the clerk's office of the county court shows. that Heatherly's share has been paid. Neither the release itself nor a copy thereof is produced and the witness does not undertake to say by whom the payment was made. His testimony is only secondary evidence and, therefore, could not be considered, had proper objection to it been made, and, if it were competent, it fails to show that Heatherly paid any portion of the judgment. It only shows a release of the judgment, without indicating who paid it. Payment out of the proceeds of Woodford's real estate would justify the execution of the release and may ac-

count for its existence. This evidence is wholly insufficient to sustain the allegation of payment by Heatherly.

Another defense is that there is in the hands of C. F. Teter, special receiver in the chancery cause of *P. G. Robinson* v. *J. W. Robinson,* one of the sureties for the bank debt, a sum of money amounting to one thousand or fifteen hundred dollars, belonging to the estate of said Robinson, and derived from rents of his real estate under a decree in said chancery cause of *Robinson* v. *Robinson.* The object of that suit seems to have been to enforce the lien of a judgment against Robinson's land, and the real estate was evidently placed in the hands of a special receiver and rented for a time before it was sold. The claim is that these rents were never applied to the payment of any judgments, and still remain in the hands of a special receiver. The only evidence of this is the testimony of John F. Woodford and L. D. Robinson, a son of the said J. W. Robinson, who died before the institution of this suit. The record of the chancery suit of *Robinson* v. *Robinson* which would show what became of these funds and the proceeds of his lands is not produced. It is said to have been lost. But the order book would undoubtedly show something concerning the disposition of his estate. None of the decrees in that case are produced in the effort to substantiate this contention, and this testimony is open to the objection interposed to the evidence offered concerning the alleged Heatherly payment. It proves nothing. John F. Woodford testifies that it is his understanding that Robinson's real estate sold for more than enough to satisfy all the liens upon it and that, but for the failure of the Farmers' Bank to present in that suit its judgment against Robinson, that surety would have paid out of the proceeds of his real estate his portion of the debt. This, again, is only secondary evidence offered without any foundation for it having been laid and it falls far short of proving the affirmative matter of defense alleged. The witness does not state what the judgments against Robinson amounted to, the amount realized from the sale of his real estate, the costs of the suit, or any of the facts upon which the issue made depends. He does not even say of his own knowledge that there was a surplus, but only that it is his understanding. Whether, if proved, the matter relied upon would be a good defense, it is unnecessary to inquire.

The defendant also relied upon the alleged levy of the execution of July 8, 1891, upon money in the Tygarts' Valley Bank, to which reference has been made. The officer who made the memorandum on the execution testifies that there was in fact no levy made. He saw no money, had none in his hands nor any dominion over it, but made the memorandum upon the assurance of the cashier that the money would be forthcoming at any time he might want it. Moreover, he amended this return, if such it may be considered, before delivering up the execution. The memorandum was made on September 5, 1891. On September 26, 1891, the attorney for the plaintiff endorsed upon the execution an order directing it to be returned unexecuted. On the execution, the officer wrote "returned unexecuted by order of Att'y for plaintiff." Reading all these endorsements together, it is manifest that the return was made on or after September 26, 1891, and it negatives effectually the inference of any satisfaction of it, or liability for the amount of it by the officer, arising from the memorandum made on September 5, 1891.

It follows from these conclusions that the circuit court erred in dismissing plaintiffs' bill. They are clearly entitled to enforce the lien of the judgment against the real estate of John F. Woodford for one-half of the judgment of February 1, 1886, with interest thereon from said date and $3.75 costs, less the sum of $594.13 paid by said John F. Woodford, November 4, 1889.

By the decree satisfied out of the proceeds of the lands, the principal sum in the judgment and interest thereon to September 26, 1887, were aggregated, the amount ascertained to be $1,961.95, and interest allowed on the aggregate from said date, and the proceeds of the land sold were held liable to contribution in favor of any of Woodford's co-sureties who might satisfy the decree, on the basis of said aggregate sum, subject to the credit aforesaid. Under section 18, chapter 131, of the Code, a decree for the principal with interest added to the date of the decree, June 4, 1891, could have been made, allowing interest on the aggregate from that date. Hence, the law authorized a decree for interest upon interest after decree, in that way and to that extent, in favor of the creditor against all the sureties, and upon his satisfying the decree with such interest, the same right passed to J. M. Woodford against his co-sureties, together

with the right to interest on the whole amount paid by him for his co-sureties from the date of payment. Though it is the lien of the original judgment his assignees are now enforcing, a decree based upon the same lien, has rightfully augmented the principal sum by the addition thereto of accumulated interest as aforesaid. This sum was further increased by the interest thereon until the date of payment, subject to deduction of the amount paid by John F. Woodford, as of the date of that payment, and one-half of the judgment, with interest thereon as aforesaid until paid, and costs, and interest on the aggregate from the date of payment, subject, however, as to said one-half, to a deduction, as of November 4, 1889, of the sum of $594.13, paid by John F. Woodford, is the measure of liability of said John F. Woodford by way of contribution. "The amount of the payment made, with legal interest, is the measure of recovery." *Faires* v. *Cockerell*, 88 Tex. 428; 27 Am. & Eng. Ency. Law, 207. Out of that sum, if sufficient, the plaintiffs are entitled to have satisfaction of their judgments, and, if insufficient to pay them in full, it is to be applied on them *pro rata*. But the amount for which decrees are to be entered can be more conveniently ascertained, under these principles, in the circuit court than here.

For the reasons above stated, the decree complained of will be reversed and the cause remanded with directions to enter a decree for plaintiffs in accordance with the principles and directions herein stated, and for such further proceedings as the rules and principles governing courts of equity may require.

*Reversed.*