# Wytheville.

## WOHLFORD V. TRINKLE.

### JULY 26th, 1893.

CHANCERY PRACTICE—*Rehearing—Case at bar.*—A rehearing of suit for sale of lands after the sale has been made and confirmed, on the ground that one of the defendants had not been served with process, will not be allowed, although she testified positively that she was not served, and no trace of the case appears either on the process book or rule book, where the decree recites that process had been served on all the defendants. There are endorsements on the bill as if rules had been taken; the deputy clerk testified that he issued process against her; an order of publication containing her name was duly published in a newspaper; the deputy sheriff testifies that he served process on her at her home, and returned it to the deputy clerk; and one witness testifies that he had seen a summons for her which appeared to have been returned "executed."

Appeal from three decrees of circuit court of Wythe county, rendered August 19, 1891, September 22, 1891, and March 10, 1892, in chancery causes, in one whereof George M. Wohlford and others were complainants and John Grubb, Mrs. L. M. Trinkle and others were defendants, and in the other the said Mrs. L. M. Trinkle was complainant and said George M. Wohlford and others were defendants. The decree of the circuit court sustained Mrs. L. M. Trinkle's claims to the land and dismissed the bill of Wohlford and others. From this decree Wohlford and others appealed. Opinion states the case.

*Blair & Blair*, for appellants.

*Walker & Caldwell,* for appellees.

LEWIS, P., delivered the opinion of the court.

The appellants filed their bill in the court below for a sale of a certain parcel of eighteen acres of land, situate in Wythe county. This land formerly constituted a part of a tract of 106 acres of which Jacob Wohlford died seized in 1862. The deceased died intestate, leaving five children, his heirs at law, to whom, at his death, the land descended. Aftewards the land was divided among the heirs, when the eighteen acres in controversy was allotted to Kathrine Wohlford, who intermarried with James Stephens. The bill states that Priscilla Wohlford, another daughter of Jacob Wohlford, who intermarried with Timothy Reardon, acquired the interest of Kathrine Wohlford, and afterwards died intestate, whereupon the land descended to the appellants, as her heirs at law. The bill also states that the appellee, Mrs. L. M. Trinkle, "sets up some sort of claim to the said eighteen acres," and she and others, some of whom are non-residents, are made defendants to the bill.

The suit was commenced on the 27th of June, 1887, and at the following September term the cause was placed upon the docket. At the same time a decree was entered upon the bill taken for confessed, which, after reciting that *process had been executed on all the defendants*, directed the land to be sold. The land was afterwards sold, pursuant to the terms of the decree, and at the March term, 1888, the sale was confirmed.

Afterwards the appellee, Mrs. Trinkle, filed a petition for a rehearing, denying that process in the suit had been served on her, or that she had in any way been notified of the pendency of the suit until after the last-mentioned decree had been entered, and praying that all the orders and proceedings in the cause be set aside and annulled. On the 19th of August, 1891, an order was entered granting the prayer of the petition, and

giving leave to the petitioner to file her answer to the bill, which she did. Depositions were taken, and when the cause came on to be finally heard, her claim to the land was sustained, and the bill dismissed with costs.

The single question to be determined is whether the recital in the decree of the September term, 1887, that process had been executed on all the defendants, including Mrs. Trinkle, is true. No question is raised as to the service of process on any other party; nor can it be successfully denied that the *onus* was upon her to establish the averment in her petition that she had not been notified of the suit.

The proceedings before the cause was put on the court docket were certainly very irregular. Indeed, it is hard to imagine a greater state of confusion in a clerk's office than the evidence shows existed in the clerk's office of the court below, when, and for some time before, the present suit was commenced. There is no trace of this case to be found either on the process book or on the rule book, although there are endorsements on the bill as if rules had been taken. But no objection as to the irregularity of the proceedings was taken until the appellee filed her petition for a rehearing after there had been an adjudication of the merits of the case—that is to say, until after a sale of the land had been ordered and confirmed.

The appellee testifies positively that she was not served with process, and there is no process to be found in the record. The witness, however, for the appellants, Clemmens, who was deputy clerk at the time the suit was instituted, testifies that he issued process according to the memorandum for the suit, which appears in his handwriting on the memorandum book; and included among the names of the defendants in this memorandum is that of Mrs. Trinkle. It also appears that there was an order of publication, which was duly published in a Wytheville newspaper, which also embraces the name of Mrs. Trinkle. The deputy sheriff, moreover, testifies that he served

process on her at her home in Wytheville, and returned the process to the deputy clerk from whom he received it. Several of the defendants testify that process in the suit was served on them, and one of the witnesses for the appellants testifies that he saw among the papers in the cause, before it was put on the court docket, a summons for Mrs. Trinkle, which appeared to have been returned "executed."

This is the substance of the evidence for the appellants, which, taken in connection with the weight to be given to the recital in the record that process had been served on all the defendants, constrains us to the conclusion that the circuit court erred in granting the prayer of the appellee's petition for a rehearing, and in subsequently dismissing the bill.

The evidence for the appellee, independently of her own deposition, shows little more than what appears from the evidence for the appellants. Thus, Foster, who was clerk of both the circuit and county courts, but who was chiefly engaged in the clerk's office of the county court, testifies to the very loose and careless way in which the business in the clerk's office of the circuit court was conducted by his deputies for some time before the present suit was instituted. He says important papers were often lost or misplaced, and that he has been unable, after making search, to find any process in the present case. He admits, however, that he himself made the endorsement on the bill: "August rules, 1887, bill filed; O. P. executed, and D. N. as to adults upon whom process has been executed," and that at the following September rules he made the further endorsement: "D. N. as to adults on whom process has been served," which last endorsement, he says, was intended to be decree *nisi* confirmed. He says further he made these endorsements in that peculiar manner because he did not know of his own knowledge that process had been served, though he supposed it had been from the memorandum made by the deputy, and the statements to him of the plaintiffs' attorney.

The law applicable to a case of this sort is so well settled that we need only refer, without comment, to *Hill* v. *Woodward*, 78 Va., 765; *Ferguson's adm'r* v. *Teel*, 82 *Id.*, 690, and *Moore* v. *Green*, *ante*, p. 181.

The point was made in the argument for the appellee that, inasmuch as no rules were regularly taken in the case, the circuit court had no jurisdiction of it. But this is clearly a mistaken view. The object of rule-days is merely to expedite the maturing of causes in vacation, and the rules that are taken in a cause are orders of court, though made in the clerk's office. Accordingly, section 3293 of the Code expressly gives the court control over all proceedings in the office during the preceding vacation. It is also provided that the court may reinstate any cause discontinued during such vacation; set aside any of the proceedings, or correct any mistake therein, and make such order concerning the same as may be just. Nothing, therefore, could have been further from the intention of the legislature than to make the jurisdiction of the court dependent upon the regularity of the proceedings in the office.

We say nothing as to the title to the land in controversy, because, if the appellee was served with process in the suit, that question does not properly arise on this appeal. The sole ground upon which the decrees ordering and confirming a sale of the land were sought to be re-heard was that she had not been served with process; and as, in our opinion, that fact has not been established, no other question is open for consideration. There is nothing, in other words, in the petition for re-hearing to bring the case within the general rule in regard to applications to rehear interlocutory decrees on matters of fact. That rule is that the petition must set forth the discovery of new evidence, and must be supported by affidavit that such after-discovered evidence could not have been brought forward by the use of reasonable diligence before the decree was rendered. *Armstead* v. *Bailey*, 83 Va., 244; *Whitton* v. *Saunders*, 75 *Id.*, 563.

It follows that the decree granting the prayer of the petition for rehearing and the subsequent decrees complained of are erroneous and must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

DECREES REVERSED.