# CHARLESTON.

SAYRE, *Receiver,* v. McINTOSH *et al.*

Submitted February 20, 1917.   Decided April 17, 1917.

1. JUDGMENT—*Default Judgment—Motion to Vacate.*

Where except as to the common order or conditional judgment a rule docket shows the usual endorsements thereon by the clerk while the action is pending at rules, as follows: "February rules, 1916, process returned served on all defendants; March rules, 1916, declaration filed; April rules, 1916, common order confirmed and order of inquiry;" and the endorsements on the declaration show, "February rules, 1916, process returned served on all the defendants; March rules, 1916, declaration filed and common order confirmed; April rules, 1916, cause set for hearing," and an order is entered at the next succeeding regular term rendering judgment for plaintiff upon writ of inquiry executed on default of appearance by defendant, and reciting that the case is then properly on the docket for trial at that term, it is not error to overrule a motion thereafter made by the defendant to vacate the judgment, when the motion is based solely upon the ground of incompleteness of such endorsements, unless it clearly appears that defendant was prejudiced by the omission of the clerk to endorse on the rule docket the usual entry of the common order or conditional judgment as of the rule day on which the declaration is filed. (p. 261).

2. SAME—*Default—Judgment—Vacation—Affidavit.*

Where such endorsements appear on the rule docket and declaration, as if regularly made thereon, and the default judgment order recites that the case then properly was on the court docket for trial at that term, such judgment ought not to be set aside upon a motion based merely upon an affidavit stating that affiant after the date of the judgment order upon examination of the rule docket found thereon no such entries, and that upon his information and belief they were not made thereon while the action was pending at rules. (p. 261).

3.  SAME—*Default Judgment—Validity.*

    The mere omission to enter the common order on the proper rule day or seasonably thereafter, due to the neglect or inadvertence of the clerk, does not, where other rules properly are taken and endorsed, render invalid a judgment by default, or subject it to annulment upon motion thereafter made, based solely upon such irregularity; the obvious purpose of §60, ch. 125, Code, being to prevent such action, unless it is made to appear affirmatively that the omission operated to the substantial prejudice of the party thereby affected.  (p. 264).

4.  SAME—*Default Judgment—Correction of Entry—Statute.*

    The manifest object of §60, ch. 125, Code, was to authorize the court in term to correct any irregularities or omissions of the clerk as to entries at rules occuring within the preceding vacation, unless the irregularity or omission be such as materially to prejudice the rights of the parties to the action.  This correction the court may cause to be made either by remanding the case to rules for that purpose, or by its own order in express terms making the correction, or by a recital therein having that effect.  (p. 264).

5.  SAME—*Default Judgment—Entry of Conditional Judgment.*

    Where plaintiff has done all the law requires him to do to entitle him to a judgment in term, upon execution of the writ of inquiry awarded at rules, the mere omission to enter on the rule docket the common order or conditional judgment will not alone deprive him of the right to a judgment by default obtained on the first day of the next succeeding term upon the execution of such writ, the defendant, though duly served with process, not having theretofore appeared to the action for any purpose.  (p. 269).

6.  SAME—*Default Judgment—Vacation.*

    An office judgment actually entered of record in term, upon an inquiry of damages executed, can not be set aside, at the term at which it was entered, where the motion is based solely on alleged irregularities in the proceedings at rules, unless a plea and counter affidavit be tendered denying liability in whole or in part as to the matters alleged in the declaration.  (p. 269).

Error to Circuit Court, Jackson County.

Action of debt on a bond of indemnity by T. J. Sayre, receiver, against C. L. McIntosh and others.  Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Pendleton, Mathews & Bell, Chas. E. Hogg,* and *Robt. L. Hogg,* for plaintiffs in error.

*J. L. Wolfe,* for defendant in error.

LYNCH, PRESIDENT:

This is an action of debt on a bond of indemnity, the judg-ment in which, rendered by default, is before us for review upon assignments of error which may be classified under three headings: first, the insufficiency of the proceedings at rules; second, surprise; and, third, insufficiency of the declaration to sustain the judgment.

The instrument on which plaintiff declares is an undertak-ing by the Citizens Trust & Guaranty Company of West Vir-ginia as surety to reimburse the Bank of Ravenswood in an amount not to exceed ten thousand dollars for any loss of money, securities or other personal property owned by it or entrusted to it, sustained by or through the fraud or dis-honesty of Charles L. McIntosh, the president of the bank and principal in the bond.

The declaration charges that, in addition to the usual duties incident to and inhering in the office of president of a banking institution, McIntosh was to have the custody of the cash and notes of the bank, for and on its behalf to receive and safely keep deposits of money, make drafts and draw checks on the funds of the bank, and negotiate loans and discounts; that the bond of indemnity remained in full force and effect from September 1, 1911, until August 31, 1915, during which period McIntosh continued to be and remain president of the bank, and had the custody of and free access to its cash and notes, and for and on its behalf received large sums of money and deposits, drew drafts upon it, and made many loans and discounts; that the bank during that period continually kept on hand from five to six thousand dollars daily; and, in substance, that because of his embezzlement and unlawful appropriation of the money and securities aforesaid the bank became insolvent, and, as a result of the insolvency, plaintiff was appointed receiver for the bank. Specifically, the declaration further charges that within the same period McIntosh did fraudulently and dishonestly abstract and ap-propriate from the funds of the bank so in his custody and under his control, without its knowledge or consent, and at divers times and in divers amounts, the sum of $14,200; by means whereof the defendant trust and guaranty company

became liable to pay said bank, and is now liable to pay to this plaintiff as its receiver, the sum of $10,000 with its proper interest.

Defendants rely more particularly upon alleged irregularities in the proceedings at rules, or rather upon the failure to enter of record any rules while the action was pending thereat in the clerk's office. The only entry appearing on the rule book as of the February rules, 1916, when the process was returnable, is the notation that the process was returned served on the defendants; at March rules, "declaration filed"; April rules, common order confirmed and order of inquiry. The last two entries were regular, if made at the time designated or seasonably thereafter; and the common order confirmed implies the timely entry of the common order or conditional judgment. Except as to the entries of the common order at March rules, and cause set for hearing at April rules, the endorsements on the declaration were the same as the entries on the rule docket. The default judgment of which complaint is made was entered on the first day of the ensuing April term. Two days thereafter, the Citizens Trust & Guaranty Company appeared and moved to set aside the judgment, and in support of the motion filed two affidavits, one by W. G. Peterkin, its president, the other by Walter Pendleton, one of its attorneys. While in his affidavit admitting the filing of the declaration at March rules, as indicated by the endorsement duly made thereon, Peterkin says the comon order was never entered, and that from his information and belief no rules whatever were taken at the March and April rules; and that, although there appear on the law rule docket the notations that at February rules the process was returned served on the defendants, at March rules the filing of the declaration, and at April rules the common order confirmed and order of inquiry, yet when examined by him on April 6th there was upon the docket no such entry; wherefore he concludes that the case was improperly upon the office judgment docket for hearing or trial at the April term. And it is contended that, because this statement in the affidavit is not controverted, the motion to set aside the judgment ought to have been sus-

tained. It can not, however, be said there is no such denial, if material; because the judgment order says "this cause is properly on the docket for trial at this term of the court." If strict observance of the ordinary procedure at rules. is essential to the entry of a judgment in an action at law upon the docket of the trial court, the judgment order virtually ascertained and adjudged that the procedure had been observed; else the court could not have said, as it did say, the cause was properly on the docket for trial at that term.

This court has frequently had occasion to review proceedings at rules; yet none of the decisions present the same condition as is found in this case. For the most part defendants, in support of the motion, rely upon the statements contained in the opinions by way of argument in *Gallatin* v. *Davis,* 44 W. Va. 109, and *McDermitt* v. *Newman,* 64 W. Va. 119. But in neither of these cases was the observation deemed of sufficient importance to become a point of the syllabus therein. In the Gallatin case it is said by Judge BRANNON that an endorsement on the bill and entries in the rule docket of the return of process served at April rules, and the further endorsement on the pleading that at May rules the bill was "taken for confessed and set for hearing", will not do. "This suggestion revealed the error at rules. There was no entry in the rule docket. The court in. its decree ordered the bill taken for confessed; but the point is that never, at rules, was the case set for hearing. A defendant is bound to attend at rules when summoned; but I have yet to learn that a case can be entered on the hearing docket, and heard, without an entry at rules setting it for hearing, if the defendant do not appear and thereby waive the error. Proceedings at rules must end and the case go on the hearing docket before there can be decree. * * The entry setting the case for hearing is indispensable. These proceedings at rules, especially the order to hear the case, are no empty formality."

Judge BRANNON also wrote the opinion in *Darnell* v. *Flynn,* 69 W. Va. 146, in which he says: "The argument is that the case was not set for hearing at rules, and an opinion drawn by me is cited from *Gallatin* v. *Davis,* 44 W.

Va. 117, taking the position that it is error to decree where a case was not set for hearing at rules''. He admits, however, ''that was not an actual decision of the court'', and cautiously .adds ''probably it is correct in the case of an adult. It may be that he could say that where the case was heard without being set for hearing at rules it was a surprise upon him to hear the case without his appearance. * * Moreover, the decree of the court declares that the case had been regularly matured and set for hearing at rules. The court must have so found upon evidence before it, and we can not say that this judicial ascertainment is false. * * So this point as to Emma Francisco is unsubstantial and not cause for annulling the decrees''. He also said that the infants could not be relieved for that reason, because of the informal answer filed by their guardian ad litem. But he was careful to make a part of the syllabus the statements: ''The omission of a clerk to enter orders at rules showing the filing of a bill and setting the cause for hearing will not reverse decrees as to infants rendered upon their answer by guardian *ad litem.* Where a case is heard as to infants, upon their answer by guardian *ad litem,* a decree will not be set aside on the ground that the case was not set for hearing at rules. Delivery of a bill in a chancery suit to the clerk in his office is a filing of the bill, though no endorsement on it of filing be made''. If it be true, as said in the Gallatin case, that proceedings at rules are ''no empty formality'', these points can be justified only on the theory that an answer by a guardian *ad litem,* like an answer by an adult, effects a waiver of the irregularity at rules in a suit where the interests of infants are involved. They can be defended upon no other theory.

The irregularity noted by Judge ROBINSON in the McDermitt case was that, although the cause was remanded to rules to afford an opportunity to bring in a nonresident as an additional party by an amended bill, the only thing done at rules was to direct publication as to him; and as to the party so introduced, the court directed the clerk to enter the rules that should have been entered, which he, although so directed, omitted to do. True it is said in the opinion, ''the

object of proceedings at rules is to expedite the maturity of causes in the recess or vacation of the court. 4 Minor Inst. (3rd Ed.) 664. It would certainly be erroneous to hear a cause that had not been matured for hearing at rules, in the absence of a defendant prejudiced thereby. A defendant takes notice of these rule day entries, and relies upon them. If none is made, he has a right to rest upon the knowledge that the case is not being prosecuted against him to a hearing at which he must respond''. But the conclusion reached was that by appearing to the bill by answer the defendant waived these irregularities, if such they be.

But, because a court has control over all proceedings in the office of the clerk during the preceding vacation, it may reinstate any cause discontinued within the vacation, set aside any of the proceedings, or correct any mistake therein, and make such order concerning the same as may be just. §60, ch. 125, Code. And an authority binding on us says ''an office judgment improperly entered without an order for inquiry of damages may be corrected''. *Shelton* v. *Welch,* 7 Leigh 175. Such a writ should have been awarded, the court said, but the omission was a clerical error and amendable. And in a still earlier case, *Digges* v. *Dunn,* 1 Munf. 56, involving debt on a judgment alleged to have been obtained at a quarterly session court in August, 1788, the plea was no such record. The transcript, introduced to prove the cause of action, showed entry of the judgment at rules in July, 1788. The trial court found there was no such record as that averred, and gave judgment for defendant. This finding was reversed and the case remanded for further proceedings, the judgment being treated as valid. The principle is applicable here, although the question raised was a variance between the *allegata* and *probata.*

In *Southern Express Co.* v. *Jacobs,* 109 Va. 27, the court, in construing a statute of which our section 60 is an exact counterpart, overruled defendant's motion to remand the case to rules on the ground that there was no entry by the clerk showing any proceedings thereat, and directed the proper entries to be made; holding that ''where plaintiff has done all that was required to entitle him to an office judg-

ment he could not be prejudiced by the failure of the clerk to enter the rules as required by law''. This, we think, is a sound proposition.

In *Riggs* v. *Lockwood,* 12 W. Va. 133, the objection was that the record did not show the bill was filed at rules, or that any rules were taken in the cause, or that the bill was taken for confessed at rules, or declared to be taken for confessed in court. This court in affirming the decree said: ''It is true that neither of the decrees entered show how the cause was matured for hearing. The better practice certainly is for the decree to show on its face that the cause was regularly matured for hearing, but it is not error to enter a decree in a cause not showing this, if the cause was in fact matured for hearing. * * Here the record does not show the cause was set for hearing''; but it did appear that the summons was returned executed, the bill filed, and that defendants appeared and made defense. ''It results from this that, in the absence of anything to the contrary appearing upon the record, it must be presumed that the case was regularly matured for hearing when the decrees were entered''.

In *Telegraph Co.* v. *Railroad Co.,* 76 W. Va. 120, this court, in recognition of the right to correct proceedings at rules, said: ''The final decree recites service was had as to both the original and amended bills upon all the defendants except Jack Hamilton. This must be taken as supplying the omission and correcting the error in the rules. The court has such authority by virtue of statute, §60, ch. 125, Code 1913. * * Defendant is not prejudiced because the correction was not expressly and formally made. * * Every reasonable presumption must be indulged in favor of the correctness of the decree''.

A default judgment rendered in term, where the clerk erroneously awarded a writ of inquiry, was sustained in *Anderson* v. *Doolittle,* 38 W. Va. 629, because the entry of ''the judgment in court, disregarding the writ of inquiry, was a sufficient correction of the mistake''.

Section 60 has been construed also in other cases as a grant of plenary power on the court to correct any omissions, errors or mistakes made by the clerk when the case is pending

at rules. *Baylor* v. *Railroad Co.*, 9 W. Va. 270; *Herring* v. *Bender*, 48 W. Va. 498; *Southall* v. *Bank*, 12 Gratt. 312; *Wohlford* v. *Trinkle*, 90 Va. 227.

In the Wohlford case, the court in stating the facts said: "The proceedings before the cause was put upon the court docket was certainly very irregular. Indeed, it is hard to imagine a greater state of confusion in a clerk's office than the evidence showed existed in the clerk's office of the court below when and for some time before the present suit was commenced. There is no trace of this case to be found either on the process book or on the rule book, although there are endorsements on the bill as if rules had been taken. But no objection as to the irregularity of the proceedings was taken until the appellee filed her petition for a rehearing after there had been an adjudication of the merits of the case; that is to say, until after a sale of the land had been ordered and confirmed. * * Foster, who was clerk of both the county and circuit courts, but who was chiefly engaged in the clerks' office of the county court, testified as to the very loose and careless way in which the business in the clerk's office of the circuit court was conducted by his deputies before the present suit was instituted. He says important papers were often lost or misplaced, and that he had been unable after making search to find any process in the present case. He admits, however, that he himself made the endorsement on the bill, 'August rules, 1887, bill filed; O. P. executed, and D. N. as to adults upon whom process has been executed'. The last endorsement, he says, was intended to be decree nisi confirmed. He says further he made these endorsements in that particular manner because he did not know of his own knowledge that process had been served, though he supposed it had been from the memorandum made by the deputy and the statements to him of the plaintiff's attorney. The law applicable to a case of this sort is so well settled that we need only refer without comment to *Hill* v. *Woodward*, 78 Va. 765; *Ferguson* v. *Teel*, 82 Va. 690; and *Moore* v. *Green*, 17 S. E. 872", stating the doctrine of presumption of regularity in such proceedings in the absence of evidence to the contrary. "The point was

made in the argument for appellee that, inasmuch as no
rules were regularly taken in the case, the circuit court had
no jurisdiction of it; but this is clearly a mistaken view.
The object of rule days is merely to expedite the maturing
of causes in vacation, and the rules that are taken in the
cause are orders of court, though made in the clerk's office''.
Then quoting the statute corresponding with our section 60,
the opinion further says: ''Nothing therefore could have
been further from the intention of the legislature than to
make the jurisdiction of the court dependent upon the regu-
larity of the proceedings in the office''.

The facts in the Southall case, as gathered from the opin-
ion, were that at August rules, 1852, the declaration was filed
and the common order taken. At the September rules the
defendant in the action appeared and filed a plea of payment
of $8800, part of the debt in the declaration mentioned, and
gave a rule for replication; and at the same rules the plain-
tiff filed a replication to the plea, and issue was made upon
it by the clerk. At the ensuing term the defendant moved
the court to correct the error alleged to have been commit-
ted by the clerk in failing to enter a discontinuance of the
cause upon the plaintiff's filing a general replication to the
plea, and thereupon on motion of the plaintiff he had leave
to withdraw his replication, and the cause was sent to rules
for further proceedings. This was upon the 20th of September,
1852. At the October rules, 1852, the record states that on mo-
tion of the plaintiff the common order entered against the de-
fendant at August rules was confirmed. At the November and
December rules, 1852, and at the January and February
rules, 1853, the entry was that the cause was continued for
replication on motion of the plaintiff. At the March rules,
1853, plaintiff filed a general replication to the plea and took
a confirmation of the common order for the part of the debt
not answered by the plea. At the following term the defend-
ant moved the court to send the cause back to rules because
the clerk had improperly entered a confirmation of the com-
mon order at the October rules, and because he had im-
properly received the replication to the plea at the March
rules and given judgment for that part of the debt not con-

troverted by the plea. But the court, being of opinion that the errors might be corrected by it, refused to remand the cause to rules, set aside the orders entered at the October and March rules, and gave the plaintiff leave to file his replication at that time. The replication was then filed, and an issue made up thereon, and at the same time judgment was granted plaintiff for that part of the debt not answered by the plea. The court, speaking through Judge Lee, said: ''When the plea was filed at the September rules, 1852, the plaintiff in the action should have caused the common order to be confirmed as to so much of the debt as the plea did not and did not profess to answer. The failure so to do and filing a general replication occasioned a technical discontinuance of the action. And so at October rules, after the cause had been remanded to rules at the previous term, the plaintiff instead of confirming the common order generally should have confirmed it as to the part not answered by the plea, and then filed his replication. Nor after such a general confirmation of the office judgment could the irregularity be cured by the subsequent proceedings at rules. * * By the general confirmation of the common order at the October rules the proceedings at rules were closed, and the defendant could not be held to attend longer at rules in the expectation that at a subsequent rule day plaintiff would correct the error in the proceedings and put him to a further pleading. But, though it was not competent for the clerk to correct the proceedings at rules, yet under §51, ch. 172 of the Code, the court clearly had full authority so to do. By that section control is specially given to the court over all proceedings in the office during the preceding vacation, and it may reinstate any case discontinued during such vacation, set aside any of the proceedings, correct any mistake therein, and make such order concerning the same as may be just. There can be no doubt, then, that the court might properly, as it did, set aside all the proceedings at rules after the cause had been remanded at the previous term, and permit the plaintiff to do then, in court, what he could and should have done at the rules, to-wit, file his replication and take judgment for the part not answered by the plea''.

We can not sanction the proposition that the mere carelessness or indifference of the clerk in the exercise of his official function as regards proceedings at rules renders invalid a judgment fairly obtained. The obvious purpose of section 60 was to prevent that result, and to authorize the court in term to correct any omissions of the clerk as to entries at rules, or endorsements on a pleading, unless the omission or irregularity be such as materially prejudices the right of the parties. This the court may do either by remanding the case to rules for correction, or by its own order in express terms making the correction, or by a recital therein having that effect, as held in *Anderson* v. *Doolittle, supra.* The judgment before us was obtained in term, though on the first day thereof, without any imputation of fraud, unfairness or covin, after defendants thrice publicly were called in open court, the order entering the judgment expressly adjudging that the action properly was on the docket for judgment therein when rendered. The defendants were grossly negligent in not appearing, either while the case was at rules or on the first day of the term, to enter appearance by demurrer or plea, in order to prevent further proceedings therein except in accordance with well established legal procedure.

It is difficult to perceive in what respect defendants were surprised, misled or prejudiced by any omission or irregularity in the proceedings at rules of which they complain. For evidently not until after the entry of the judgment in term were they aware of any omission of the clerk to make entries on the rule docket or endorse them on the pleading in the regular and usual manner. The affidavits are silent upon this phase of the inquiry, except remotely inferentially; for according to the statements therein contained it is apparent defendants, as they themselves admit, did not know and did not suspect the existence of any irregularities in such proceedings, or omissions by the clerk at rules, until after they discovered that the judgment had been entered. And it is permissible to assume that but for the entry of the judgment they would never have discovered these irregularities. Neither of them appeared for any purpose at rules while the

action was there pending, although, as Peterkin in his affidavit admits, the process to answer was duly served on him as president of the trust and guaranty company on January 21, 1916, and virtually that he, although a practicing attorney, did not himself enter such an appearance at rules, and did not employ any attorney to represent the company of which he was president either at the rules or in court upon the trial of the case, until after the entry of such judgment. He does say that in the office of the company he met A. G. Mathews, a member of the firm of Pendleton, Mathews & Bell, and conversed with him in reference to the transaction before the court term, and transmitted to that firm data relating to the case; but this conversation was had and the data transmitted to the law firm, not as counsel for the company, but as the counsel of his co-defendant McIntosh; and not until after the judgment was rendered was that company represented by counsel. A cautious but unsatisfactory attempt is made to create the impression that the company relied for aid and assistance upon the law firm employed by McIntosh to represent it in the trial of the case. McIntosh, although presumably present on the day the motion was made to vacate the judgment, was not called upon to make and did not make an affidavit verifying the statement that he had employed counsel to defend him in the action. But that he did employ the firm of Pendleton, Mathews & Bell, not to conduct but to assist him at such trial does sufficiently appear from the affidavit of the senior member of that firm, who says it was employed for that purpose; but he makes it clear, not that the law firm of which he is such a member was to have charge of the case at all for the trust and guaranty company or for McIntosh in the sense that it was to take any active part in making up the issues or preparation of the defense on behalf of either of the defendants, but to assist other counsel previously employed in the trial of the action. These statements are not sufficient to convince us that either of the defendants were surprised or prejudiced by the omissions of the clerk; and the failure of each of them to appear at the rules or in court before the entry of the judgment was the sole cause of whatever surprise or prejudice occurred.

The third and last assignment challenges the sufficiency of the declaration to sustain the default judgment. The basis of this assignment is the alleged failure of that pleading to aver compliance by the bank or the plaintiff, its receiver, with the terms which by the bond are made "conditions precedent to the right to recover thereunder at the expiration of three months next after proof satisfactory to the company of any loss for which the company may be liable hereunder shall have been furnished the company at its principal office in the city of Parkersburg". But the declaration does contain the averment that "the said Bank of Ravenswood before the appointment of plaintiff as such receiver fully complied with all the conditions of said bond obligatory upon it, and that this plaintiff since his appointment as such receiver has fully complied with the conditions of said bond obligatory upon him. * * And plaintiff avers that immediately upon his appointment and on his ascertaining the default of C. L. McIntosh he gave notice in writing of said facts and the amount of said default to the defendant Citizens Trust & Guaranty Company of West Virginia; and plaintiff avers that he made demand upon C. L. McIntosh that he make good to said bank and repay to this plaintiff as such receiver the amount of said default as soon as he ascertained said default existed, but that the said C. L. McIntosh wholly failed and refused to make good or to repay to this plaintiff as such receiver said amount so obtained by him or any part thereof; and plaintiff avers that as such receiver he pursued said McIntosh upon said default to judgment in his favor in the circuit court of Jackson county, but that said judgment remains and is wholly unpaid, for the reason, as plaintiff doth aver, that the said C. L. McIntosh is wholly insolvent and was so insolvent at the time said bank went into the hands of this plaintiff as such receiver". And in detail and effect the declaration avers notice of the default to the Citizens Trust & Guaranty Company, and demand on it at its principal office and place of business in Parkersburg for payment of the amount of the default to the extent of the penalty of the bond and interest thereon, and its failure to repay the same according to the provisions of the indemnity.

Accompanied as the declaration is by an itemized statement, duly verified, of the money and securities of the bank fraudulently or ·dishonestly appropriated by the principal in the bond, these averments show compliance with the conditions of the bond sufficient to authorize the entry of the judgment complained of. So far as appears, no complaint was made by McIntosh or by his co-defendant that the statement of the loss sustained by the bank was an insufficient compliance with the requirement of the obligation to reimburse the bank, either before the bringing of this action or after it was brought, except the indefinite statement in the affidavit of· Peterkin that as the representative of the defendant company he ascertained from an examination of the books of the bank that it had suffered no loss by the defalcation of McIntosh. This statement, made after the judgment was entered, is not sufficient to warrant the conclusion that either the bank or the plaintiff as its receiver failed or neglected in any respect to comply with the terms and conditions of the contract of indemnity.

Besides, defendants can not have relief from the judgment of which they complain, for the additional reason, in itself sufficient, that they failed to tender a plea supported by counter affidavit denying liability in whole or in part upon the bond in suit. As held in *Citizens Trust & Guaranty Co. v. Young,* 75 W. Va. 241, an office judgment actually entered in court, after inquiry of damages is executed, can not be set aside at the term at which it was entered except upon the tender of such plea and affidavit. This defendants did not do, although it is contended upon the strength of the affidavit by Peterkin they did show good cause for vacating the judgment. But, conceding the sufficiency of the affidavit for that purpose, the filing of it alone does not constitute compliance with §47, ch. 125, Code. To avail a plea ought to have been filed also.

For the reasons stated, we are constrained to affirm the judgment.

*Affirmed.*